Argued 13 January; decided 27 January, 1902.

## BRANDT *v.* BRANDT.

[67 Pac. 508.]

DIVORCE—SHOWING FOR PERMANENT ALIMONY.

1. A showing that defendant had property worth $9,000, and a monthly income ample to properly suport his family, while plaintiff was entirely without means, was sufficient to justify a decree for $20 per month permanent alimony.

LIMITATION AGAINST JUDGMENT—DESCRIPTION IN WRIT.

2. A decree in divorce dissolved the bonds of matrimony, awarded permanent alimony to the amount of $20 a month, and $128 for costs and living expenses *pendente lite.* Subsequently, after considerable alimony was due, an execution was issued in favor of the complainant in divorce, and against defendant, but which failed to show that it was rendered in a divorce suit, and merely recited that plaintiff had obtained a judgment against defendant for $128, which was enrolled in the clerk's office, etc.; and on motion to

recall the execution defendant contended that the execution was void for uncertainty, and hence insufficient to prevent the running of the statute of limitations, under Hill's Ann. Laws, § 295, as amended by Laws, 1893, p. 26, providing that, if no execution issue on a judgment for ten years, it shall be conclusively presumed to have been paid. *Held,* that the contention was without merit, since, the attack being collateral, and it being sufficiently evident that the execution issued on the decree, the deficiency of the execution as to the recital of the amount recovered, etc., would be disregarded.

DIVORCE—MODIFYING ALLOWANCE OF ALIMONY.

3. Under Section 502 of Hill's Ann. Laws, giving a court power to modify a divorce decree so far as it may provide for "the mainte ance of either party to the suit," a decree may be modified so as to retrospectively cut off alimony that has already accrued, upon a proper showing: *Henderson* v. *Henderson,* 37 Or. 141, applied.

DIVORCE—FINALITY OF ALLOWANCE OF ALIMONY.

4. Ordinarily a decree fixing alimony will be considered final as to the then existing or known conditions; still, where a decree awarding permanent alimony is not based on any consideration of property rights of the wife, but merely as a provision for her support and maintenance, the statute is sufficiently broad to authorize an order releasing defendant from the payment of further alimony, for causes arising subsequently to the decree, where such course appears equitable.

EFFECT ON ALIMONY OF REMARRIAGE OF WIFE.

5. The remarriage of a divorced woman who has been granted alimony is a strong reason for modifying the decree, and where such an order has been made, the husband ought not to be required to subsequently resume the payments.

From Lane: JAMES W. HAMILTON, Judge.

In December, 1888, plaintiff, Alice O. Brandt, instituted a suit for divorce against defendant, A. Park Brandt, on the ground of cruel and inhuman treatment. It is alleged in the complaint, among other things, that plaintiff is without means to prosecute the suit; that $150 is a reasonable attorney's fee for that purpose; that $25 a month is reasonable and necessary as an allowance for the support and maintenance of herself and daughter during the pendency of the suit; that "defendant has and owns property in * * * Dakota, and in Multnomah and Lane counties, in the State of Oregon, of the aggregate value of about $9,000; that he has a good and ample monthly income sufficient to maintain himself and said plaintiff and her said daughter in a suitable manner becoming their station in life." The prayer is for a dissolution of the bonds of matrimony, attorney's fees, and maintenance during the

pendency of the suit, and "that she be awarded such other and further relief as the court may deem equitable and just in the premises." A general demurrer by defendant being overruled, on March 8, 1889, based upon an *ex parte* showing, the court ordered and directed that he pay into court within thirty days $100, for the use of plaintiff, to enable her to prosecute the suit, and the further sum of $20, and a like sum every thirty days thereafter, for her maintenance, until the further order of the court. Later there was an effort on the part of the defendant to obtain a modification of the order, but without avail. On April 20, 1889, a divorce was granted, and it was otherwise decreed that plaintiff recover of defendant $100 as the cost of prosecuting the suit, $28 as living expenses pending the suit, and the further sum of $20 per month from the entry of the decree until the further order of the court, as permanent alimony. On December 17, 1897, a writ of execution was issued to the sheriff of Multnomah County, directing him to satisfy the sum of $128, with interest at the rate of eight per cent. per annum from April 20, 1889. By virtue thereof certain real property was levied upon and sold to the plaintiff for the sum of $225.25, and the writ returned satisfied. After the execution of a sheriff's deed it was discovered that the realty sold was not the property of defendant, and on March 17, 1900, the sale was, at the instance of plaintiff, set aside, and the satisfaction of the decree canceled, and on the same day another order was entered reviving the decree, wherein it appears to have been found that there was then due and owing on said decree to plaintiff the sum of $2,820.40, and it was ordered and directed that execution issue to satisfy the same. On March 30 an execution was issued in pursuance of the order, directed to the sheriff of Multnomah County, requiring that out of the property of the defendant he satisfy the said sum of $2,820.40 and interest, as specified. On April 27 the defendant filed in said cause a motion to set aside the orders of March 17, to recall the execution of March 30, 1900, and, further, if it should be determined that said decree had not been heretofore fully satisfied or barred by lapse

of time, then that the sum of $20 a month allowed by the
original decree be remitted from and after May 2, 1889. The
motion was based upon an affidavit of the defendant, which
sets out all the proceedings from the entry of the decree and
the order directing the issuance of the execution, and shows
that the plaintiff was, in January, 1890, married to one W. T.
Shurtliff, and lived with him for a time, and was adequately
supported by him in the manner to which she had been ac-
customed, but that Shurtliff had procured a divorce from her.
It was also averred that defendant had no knowledge that the
decree granting the divorce from him contained the provision
for $20 a month permanent alimony, and that he was never
apprised or informed of the fact by plaintiff, or any one in
her behalf, or requested by her to pay the same. The plain-
tiff in response filed a counter affidavit, whereby she avers
that defendant knew of the provision complained of at the
time of its entry, but declared that he would not pay the same,
and that, while it was true that she was married again in the
month of January, 1890, she was driven to do so by poverty
and want, being unable to support herself and daughter; that
in the year 1896 her husband deserted her; and that she has
since been obliged to earn her living, and is without property
or means for her support. The motion was denied, and from
the order and decree denying the same defendant appeals.

MODIFIED.

For appellant there was an oral argument by *Mr. Wm. Tor-
bert Muir,* with a brief over the name of *Fenton & Muir.*

*Power to Modify the Original Decree—*

The court undoubtedly has the power to make the order now
asked for: Hill's Ann. Laws, § 502; *Corder* v. *Speake,* 37 Or.
105 (51 Pac. 647); *Henderson* v. *Henderson,* 37 Or. 141 (48
L. R. A. 766, 82 Am. St. Rep. 741, 60 Pac. 597); *Olney* v.
*Watts,* 43 Ohio St. 499, 508 (8 N. E. 354); *Hopkins* v. *Hop-
kins,* 40 Wis. 462; *Perkins* v. *Perkins,* 12 Mich. 456, 457; *Weld*

v. *Weld,* 28 Minn. 33 (8 N. W. 900) ; *Ex parte Hart,* 94 Cal.
254 (29 Pac. 774).

*Construction of Section* 502—

Section 502 of Hill's Code, does not limit the power of the
court to annul or alter a decree for the future ; the order may
be prospective or retrospective.

*Right of Remarried Wife to Alimony*—

When a divorced wife remarries she has no right to alimony
or support from her former husband : *Morgan* v. *Lowman,* 80
Ill. App. 557-559 ; *Stillman* v. *Stillman,* 99 Ill. 196-204 (39
Am. Rep. 21) ; *Bowman* v. *Worthington,* 24 Ark. 522 ; *South-
worth* v. *Southworth,* 168 Mass. 511 (47 N. E. 93) ; *Albee* v.
*Wyman* 10 Gray (Mass.), 222 ; *Rogers* v. *Vines,* 28 N. C. (6
Ired. L.) 293 ; *Lockridge* v. *Lockridge,* 2 B. Mon. (Ky.) 258 ;
*Bankston* v. *Bankston,* 27 Miss. 692 ; *Olney* v. *Watts,* 43 Ohio
St. 499 (8 N. E. 354) ; *Casteel* v. *Casteel,* 38 Ark. 477, 482 ;
*Hopkins* v. *Hopkins,* 40 Wis. 462 ; *Perkins* v. *Perkins,* 12 Mich.
456 ; *Sheafe* v. *Sheafe,* 36 N. H. 155 ; 2 Nelson, Div. & Sep.
§ 932.

*Validity of Execution*—

The writ does not describe the judgment or decree with suffi-
cient certainty, and is void : 1 Freeman, Ex. § 43.

For respondent there was an oral argument with a brief by
*Mr. John H. Hall.*

*Execution of* 1897 *was Valid*—

The execution issued on the seventeenth day of December,
1897, was sufficient to stop the running of the statute of lim-
itations, and was not void, as it substantially conformed to the
statute, and sufficiently identified the judgment so that any
person of common intelligence and understanding could read-
ily ascertain what judgment was intended to be described
therein ; this is all that is required, as the authorities are
unanimous upon the proposition that the form of an execution

40 OR.—31.

will not vitiate it if intent and substance are clear and the judgment can be identified: *Jones* v. *Dove*, 7 Or. 467; *Flint* v. *Phipps*, 20 Or. 340 (23 Am. St. Rep. 124, 25 Pac. 725); *Hunt* v. *Loucks*, 38 Cal. 372 (99 Am. Dec. 404); *Peck* v. *Tiffany*, 2 N. Y. 451; *Brace* v. *Shaw*, 16 B. Mon. (Ky.) 82; *Daly* v. *State*, 56 Miss. 475; *Pamille* v. *Hitchcock*, 12 Wend. 96; *Wright* v. *Nostrand*, 94 N. Y. 32; *Newman* v. *Willits*, 60 Ill. 519; *Van Cleve* v. *Brecher*, 79 Cal. 600; *Corbin* v. *Pearce*, 81 Ill. 461; *Trotter* v. *Nelson*, 31 Tenn. (1 Swan), 7); *Harlan* v. *Harlan*, 82 Tenn. (14 Lea) 107; *Jones* v. *Goodbar*, 60 Ark. 182; *Anderson* v. *Gray*, 134 Ill. 550 (23 Am. St. Rep. 696); *Dean* v. *Goddard*, 13 Iowa, 292 (81 Am. Dec. 433); *Hall* v. *Caggett*, 63 Md. 58; *Miles* v. *Knott*, 12 Gill. & J. (Md.) 300; *Perkins* v. *Spaulding*, 2 Mich. 157; *McMahon* v. *Evans*, 2 Ala. 68; *Williams* v. *Brown*, 28 Iowa, 247; *Morrison* v. *Austin*, 14 Wis. 653; *Graham* v. *Price*, 3 A. K. Marsh (Ky.), 522 (13 Am. Dec. 199); *Railsback* v. *Lovejoy*, 116 Ill. 442; *Greene* v. *Cole*, 35 N. C. (13 Ired. L.) 425; *Ellis* v. *Jones*, 51 Mo. 180.

*Effect of Remarriage on Right to Alimony—*

A subsequent marriage of a divorced wife will not of itself preclude her from recovering alimony accruing after said marriage: *Kamp* v. *Kamp*, 59 N. Y. 212; *Park* v. *Park*, 18 Hun, 466; *Shephard* v. *Shephard*, 1 Hun, 240; *Forest* v. *Forest*, 25 N. Y. 501; *Mitchell* v. *Mitchell*, 20 Kan. 665; *Stratton* v. *Stratton*, 73 Me. 481; *Kerr* v. *Kerr*, 59 How. Prac. 255; *Sampson* v. *Sampson*, 16 R. I. 456 (3 L. R. A. 349); *Sammes* v. *Medbury*, 14 R. I. 214; *King* v. *King*, 38 Ohio St. 370; *Smith* v. *Smith*, 45 Ala. 264; *Stillman* v. *Stillman*, 99 Ill. 196 (39 Am. Rep. 21); Bishop, Mar. Div. & Sep. §§ 1056 to 1062; 2 Am. & Eng. Ency. Law (2 ed.), pp. 129-140.

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

1. It is first insisted that the provision for permanent alimony is in excess of the relief to which the plaintiff was entitled under the averments and prayer of her complaint.

Under the prayer for general relief the plaintiff is entitled to such relief as is consistent with the averments and within the scope of the complaint. It is alleged that defendant was possessed of property of the value of $9,000 and had a monthly income amply sufficient for the maintenance of himself, his wife, and her daughter according to their station in life; and, permanent alimony being an incident to the divorce, the provision complained of was within the scope of the complaint, and the relief was authoritatively granted by the decree: 16 Ency. Pl. & Pr. 804, 807, 808; *Darrow* v. *Darrow*, 43 Iowa, 411.

2. It is next insisted that the statute of limitations had run, so that it was not competent for the court to revive the decree and direct the issuance of an execution. This depends upon whether the writ of execution of December 17, 1897, by virtue of which a sale of the property was attempted to be made, was void for uncertainty in describing the decree upon which it was issued. The description is contained in the preamble, and is as follows: ''Whereas, on the twentieth day of April, 1889, by consideration of the Circuit Court of the State of Oregon for the County of Lane, Alice O. Brandt, plaintiff, recovered judgment against A. Park Brandt, defendant, for the sum of one hundred and twenty-eight and no one-hundredths ($128.00) dollars, damages and costs, which judgment was enrolled and docketed in the office of the clerk of said court on the second day of May, 1889.'' It will be noted that no reference is there made to the provision for permanent alimony. The statute provides that if, at any time after the entry of the judgment, a period of ten consecutive years shall have elapsed without an execution being issued thereon, no execution shall thereafter issue, and the judgment shall be conclusively presumed to have been paid: Hill's Ann. Laws, § 295, as amended by Laws, 1893, p. 26. We take it that an execution such as is sufficient, under a decree upon which it is based and issued, to support a deed to property sold under and in pursuance thereof, will be sufficient also to revive, keep alive, or continue in force the decree itself. The analogy is apparent, and the deduction legitimate. Suppose that realty

should be sold under the execution now in the hands of the sheriff, and the purchaser's title was questioned. Would the execution of December 17, 1897, be received as evidence to show that the decree was not barred by the ten years' lapse of time? If sufficient to support a deed in the first instance, it surely would be sufficient to show a live judgment or decree when the execution was issued under which the sale was made. Now, the inquiry to be made, where the execution is offered in support of a deed, is, did it issue on the decree that is produced to support it? If it is manifest from the writ, taken in its entirety, that it did, then it must be held to be effective. Now, the more rational and wholesale rule seems to be, where sufficient appears upon the face of the writ to unmistakably connect it with the judgment or decree, to disregard variances as it respects the names of parties, dates, and the amount recovered: 1 Freeman, Ex'ns (3 ed.), § 43; Alderson, Jud. Writs, § 53; *Hunt* v. *Loucks*, 38 Cal. 372 (99 Am. Dec. 404); *Cooley* v. *Brayton*, 16 Iowa, 10; *Cunningham* v. *Felker*, 26 Iowa, 117. We adopt this rule, therefore, for the present purpose, inasmuch as this is a collateral attack as it respects the particular execution concerned. No one can doubt, upon a reading of the writ, that it was issued upon the final decree entered in this cause.

3. The next and final contention is that the decree, in so far as it awards the plaintiff $20 a month permanent alimony, should be annulled as of the date of its entry. This involves two questions: (1) Whether it is within the power of the court so to annul it; and (2) whether it is equitable and just, under the showing of the respective parties, to do so. It is conceded that, within the doctrine of *Corder* v. *Speake*, 37 Or. 105 (51 Pac. 647), and *Henderson* v. *Henderson*, 37 Or. 141 (82 Am. St. Rep. 741, 60 Pac. 597, 61 Pac. 136, 48 L. R. A. 766), the court may set aside, alter, or modify a decree respecting permanent alimony. But it is denied that it is authorized to make any order in the premises that could operate retrospectively, and thus cut off alimony that had previously accrued under the decree granting it. There is a cleavage

among the authorities touching the nature of alimony granted in connection with an absolute divorce. At common law the allowance made for the support of the wife, where there was a separation *a mensa et thoro*, was denominated "permanent alimony," and many authorities, treating the allowance made after divorce absolute as inuring upon like principles, have therefore declared that it was competent for the courts to revise, modify, or cut it off altogether, according as the changed conditions of the parties concerned and equitable considerations may suggest. Other of the authorities treat the allowance, whether in gross or in periodical payments, as an adjudication of property rights in assimilation to a settlement of partnership affairs, where the wife's property of which the husband has become possessed, the accumulations during coverture, her inchoate dower, and the obligations to support her in a manner suitable to her station in life, are all taken into account, and the alimony granted in lieu thereof; and hence they have declared that the decree becomes a matter *res adjudicata* and insusceptible of future revision or modification. Our statute, however, as construed by the decisions above cited, is broad enough to permit of the setting aside, alteration, or modification of the provision made for the maintenance of either spouse. To set aside is "to annul, to make void":. Bouvier, Law Dict. Anything less than an annulment would be an alteration or modification. So it would seem that the court is clothed with power adequate to set aside, as well as to alter or modify, a provision for permanent alimony or allowance as the exigencies of the case may require.

4. Notwithstanding, the allowance should be treated as *res adjudicata* as to the then existing circumstances and conditions, and not subject to annulment or modification, except upon new conditions subsequently arising, or, perhaps, upon facts occurring before the decree, of which the party was excusably ignorant at the time of its rendition: *Wilde* v. *Wilde*, 36 Iowa, 319; *Reid* v. *Reid*, 74 Iowa, 681 (39 N. W. 102); *White* v. *White*, 75 Iowa, 218 (39 N. W. 277); *Semrow* v. *Semrow*, 23 Minn. 214; *Weld* v. *Weld*, 28 Minn. 33 (8 N. W.

900). And where the allowance proceeds from a consideration of the restitution of property brought to the husband by rea-'son of the marriage, or the partition of property accumulations, it should be regarded as a final adjudication of the matter: *Cole* v. *Cole,* 142 Ill. 19 (31 N. E. 109, 19 L. R. A. 811, 34 Am. St. Rep. 56). But where it is made as a matter of support and maintenance merely, then the changed condition of the parties, as where the faculties of the husband have diminished, or the divorced wife has acquired other facilities or means of support, will warrant such a revision or modification, diminishing or cutting off the allowance *in toto,* as may seem reasonable and proper [*Cole* v. *Cole,* 142 Ill. 19 (19 L. R. A. 811, 34 Am. St. Rep. 56, 31 N. E. 109) ; *Stillman* v. *Stillman,* 99 Ill. 196 (39 Am. Rep. 21) ; *Lennahan* v. *O'Keefe,* 107 Ill. 620 ; *Bowman* v. *Worthington,* 24 Ark. 522 ; *King* v. *King,* 38 Ohio St. 370 ; *Olney* v. *Watts,* 43 Ohio St. 499 (3 N. E. 354)], and the decree may be made to operate retrospectively : *Morgan* v. *Lowman,* 80 Ill. App. 557. The remarriage of the wife is a persuasive circumstance, calling for an exercise of the court's discretion and authority to modify or rebate the allowance : *Albee* v. *Wyman,* 10 Gray, 222 ; *Bowman* v. *Worthington,* 24 Ark. 522 ; *Morgan* v. *Lowman,* 80 Ill. App. 557 ; *Olney* v. *Watts,* 43 Ohio St. 499 (3 N. E. 354) ; *Stillman* v. *Stillman,* 99 Ill. 196 (39 Am. Rep. 21).

5. A consideration of the original decree and the grounds upon which it is based indicates that the allowance did not proceed from any consideration of property rights of the wife, but merely as a provision for her support and maintenance, together with the support and maintenance of her daughter. The daughter, it should be noted, was the child of a former husband, and not of the defendant. Some nine months subsequent to her divorce, the plaintiff married Shurtliff, and continued to be his wife for more than six years, during which time it is alleged, and not denied, that he supported her adequately according to her station in life; and this of itself ought to relieve the defendant of her support. It seems somehow inconsistent, from the standpoint of morality and public

policy, that a wife should be receiving support from a former divorced spouse, while she is by reason of existing marital ties entitled to look to an actual spouse for maintenance of the same nature; and, if this is true while the marital relations exist, why should the right of support by the former husband be revived when the latter husband divorces her for cause? By this reasoning, we do not mean to be understood as holding that a subsequent marriage will *ipso facto* dissolve the obligation of the former husband to continue the payment of the allowance, for the authorities do not seem to go so far; but we do mean to say that it affords a cogent and convincing reason for the court to modify or cut off the allowance altogether. The plaintiff avers that since her late husband deserted her—which is equivalent to saying since he procured a divorce from her, for such is the admitted fact—she has been obliged to earn her own living, and that she is without property or means. But this cannot serve to reinstate her to her former condition. The question of accepting support from her subsequent husband was a matter necessarily deferred to her own choice, and she must be held in a measure to have renounced her allowance, to the extent, at least, of her latter husband's ability to respond. In this instance he was able to, and did, support her adequately. That support has been cut off by no fault of the defendant, and there are no considerations of right or equity that would require him to again assume the obligation. It is quite probable that defendant has been led to believe that he was not held to the payment of the allowance, although he is chargeable with knowledge that such an allowance was actually made, and this accounts in some measure for the great lapse of time without any effort to respond, and the plaintiff has only recently become importunate in exacting the permanent allowance, which at this time has increased to a large sum.

In consideration of the conditions revealed by the record, the allowance will be discontinued and annulled from and after January 20, 1890, which is about the date of plaintiff's subsequent marriage. The annulment of the sale under the

execution of December, 1897, will not be disturbed, but the execution now in the hands of the sheriff will be recalled, and an order and decree now entered directing execution to issue for $128, as costs and expenses *pendente lite,* and the further sum of $180, permanent alimony, with interest on the former sum at eight per cent. per annum from April 20, 1889, and upon the latter at the same rate from January 20, 1890, diminished by .the defendant's costs and disbursements incurred by this proceeding, both in the trial court and upon the appeal; he being entitled to recover the same from the plaintiff.                                    MODIFIED.

Decided 3 February; rehearing denied 22 April, 1902.