**LEZMORE EMANUEL, Plaintiff**

**v.**

**SONIA REHENIA OTTLEY EMANUEL, Defendant**

Civil No. 34/1969

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 7, 1978

MARIA TANKESON HODGE, ESQ., St. Thomas, V.I., *for plaintiff*

EDITH L. BORNN, ESQ. (BORNN & FINUCAN), St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge**

## MEMORANDUM OPINION

This case requires the court to determine how a child's emancipation affects the support obligations of the father and to what extent remarriage and the birth of children by that remarriage may also affect those obligations. The court further considers whether the father's support and alimony obligations, if subject to modification, may be retrospectively modified under Virgin Islands' law.

The cause came on for hearing on March 2, 1978, on plaintiff's motion for a reduction of the monthly child support payments required by an April 14, 1970, divorce decree.[1] The plaintiff's principal basis for the reduction was the emancipation of the eldest of the three children born of the parties.[2] The plaintiff also asked for a retrospective modification of the decree to December 19, 1976, the date of Alexander Emanuel's eighteenth birthday, and that such reduction be set off against a large arrearage accrued from the date of the divorce. Assuming that a substantial change of circumstances can be shown, Viles v. Viles, 4 V.I. 415, 316 F.2d 31 (3d Cir. 1963), four issues confront the Court:

(1) Is an unsegregated monthly support payment to be

---

* Territorial Court Judge sitting as District Court Judge by designation.

[1] At the conclusion of the hearing, the court entered its findings of fact and conclusions of law on the record and ordered a $50 reduction in the plaintiff's current child support payments. However, because of the importance and complexity of the issues raised, the court deferred entry of a written judgment until it could reduce its findings and legal reasoning to writing. Cf. Herman v. Hess Oil, et al., Civil No. 222/1972 (D.V.I., Div. of St. Croix, January 13, 1977). Thus, this Memorandum and the Order issued in accordance with it, is the written judgment of the Court as required by Rule 58 of the Federal Rules of Civil Procedure, 5 V.I.C. App. I, R.58.

[2] The age of majority in the Virgin Islands is eighteen. 16 V.I.C. § 261.

automatically reduced upon the emancipation of one of three children;

(2) What effect, if any, may remarriage and new-born children have upon one's support obligations;

(3) May support obligations be retrospectively reduced; and

(4) Assuming retrospective reduction is permissible, is a setoff of a sum against accrued arrearages allowable.

## I.

The parties were divorced on April 14, 1970. Plaintiff, then nearing the end of his doctoral studies at Howard University, was ordered to pay $6,500.00 as alimony at the rate of $100.00 per month and $300.00 per month as support for the three minor children of the parties. The testimony of the plaintiff, standing alone, suggests that the inquiry at the time of the divorce into his present or future financial circumstances was cursory at best. Although neither the findings of fact nor the decree makes it clear, this court assumes that the plaintiff's wherewithal to pay $400.00 per month derived partly from income he was receiving from property awarded him as part of the divorce, and partly in expectation of his future earning capacity as holder of a doctorate degree. See discussion infra at 119, 120.

Regardless of what the court anticipated the plaintiff's income would be to justify the alimony and child support payments ordered in 1970, it is clear that plaintiff's fortunes have taken an unanticipated decline in the eight intervening years. The once successful business enterprise on the plaintiff's property failed. A substantial attempt by him personally to finance and manage a similar enterprise also failed, and the plaintiff even now is obligated to various creditors for advances lost in that failure. Rental of his property has been intermittent and irregu-

lar. Although the property currently yields rental income, the enterprise—a discotheque—has been chronically erratic in the past and cannot be considered seriously as a viable source of long-term income. Plaintiff, who after receiving his doctorate secured a teaching position at the College of the Virgin Islands, has lost that position, and has not since taught at the educational or salary level that his doctorate should command. Only recently did the plaintiff find regular employment as a teacher at the high school level, after a long series of temporary and menial odd jobs.

Both parties have remarried. Plaintiff has had two children by his second wife, and must contribute to their support and to his current homestead. Testimony at trial also revealed that he now faces foreclosure on his second family's present home and the loss of any equity in it.

As a result of the financial difficulties voluntarily assumed and unexpectedly imposed upon Lezmore Emanuel, an extraordinary arrearage has accrued since the divorce. As of February 1, 1978, that sum was $17,950.00. Though $50.00 of a $350.00 monthly payroll deduction currently is being applied to reduce the arrearage, it is plaintiff's position that he can no longer afford even that small payment toward the arrearage.

Plaintiff's inability to fulfill the obligations of the divorce decree has resulted in frequent court appearances by both parties. As early as June 25, 1971—a little more than a year after the divorce—the plaintiff was ordered to pay an arrearage of $1,375.00, which had accrued to that date. The plaintiff on December 13, 1971, filed a motion for modification of the alimony and support obligations; no action was taken by the court. The defendant on December 20, 1972, moved for an increase in child support; no action was taken by the court. The plaintiff on April 9, 1974, filed a verified motion for an order to amend the

judgment. In his motion he implied that he lost his job at the College of the Virgin Islands, and said that he had no regular employment or salary and that he was living on what he could make from odd jobs. There is no recorded court response to that motion, a hearing on the matter apparently never having occurred. A stipulation between the parties, which was submitted on November 23, 1976, resulted in the present payroll deduction. Plaintiff now seeks a reduction of the payment required by that stipulation.

That the plaintiff previously and often has sought equitable relief is plain. Nevertheless, he has been allowed to owe more and more in spite of his representations that he could pay less and less. As a result, his overdue payments have turned into an enormous arrearage. Payment of the arrearage at the current rate of $50.00 per month will have to continue past his life expectancy in order for the debt to be satisfied. The arrearage burden in the context of the past and current financial crises of the plaintiff, when contrasted with the defendant's current financial status, are circumstances this court has considered in determining the reasonableness of the current obligations of Lezmore Emanual to the former Sonia Emanuel.

## II.

### A.

Statutory authority and case law in this jurisdiction clearly establish that this court has the power to modify divorce decrees. 16 V.I.C. § 110 expressly states:

At any time after a judgment is given the court, upon the motion of either party on notice, may set aside, alter or modify so much of the judgment as may provide alimony or for the appointment of trustees, for the care and custody of the minor children, or the

nurture and education thereof, or the maintenance of either party in the action.[3]

In Viles v. Viles, supra, the Third Circuit affirmed a District Court modification of the terms of a divorce decree to provide for an eventuality that had not been clearly provided for by the original decree.

We now make explicit what that decision necessarily implied, that the District Court of the Virgin Islands has power to modify a decree such as that originally entered in the instant case.

4 V.I. at 421, 316 F.2d at 34. While Viles dealt solely with alimony payments, the power conferred by 16 V.I.C. § 110 applies to child support as well. Therefore, 16 V.I.C. § 110, both by the specificity of its language and by interpretation by the Third Circuit, gives this court the power to modify the 1970 decree. Cf. Williams v. Williams, 22 N.W. 2d 212 (Minn. 1946); Brandt v. Brandt, 40 Or. 477, 67 P. 508 (1902).

It remains to be determined, however, under what circumstances a modification is justified. With regard to alimony, Viles held:

Obviously there must be some self-imposed limitations upon the court's exercise of this power. If either party to a divorce were permitted to invoke at will a full hearing and de novo adjudication of the fair amount of alimony, Section 13 of the divorce law [16 V.I.C. § 110] would become a potential vehicle for harassment and a source of wasteful litigation . . . . The courts in almost every American jurisdiction have recognized this problem and met it by holding that a party seeking modification of an alimony decree must allege such a substantial and continuing change of circumstances since the entry of the original decree as to make continued enforcement of that decree unfair . . . . In furtherance of this requirement, the original decree should be treated as a final adjudication of the rights of the parties at the time

---

[3] The specific grant of the power to "set aside" former decrees differentiates this statute from the relevant statutes in most other states, which generally grant only limited power to modify divorce decrees.

it is entered, and the court which entered it should be presumed, in the absence of a direct appeal, to have given appropriate consideration to the circumstances which should have affected its judgment. Moreover, it is quite proper for the court in framing the original decree to anticipate future changes in circumstances of the parties and to provide specific adjustments of the post-marital rights and duties of the parties which will be made in the event that the circumstances do change as anticipated. When it is clear that the court which entered the original decree has considered and provided for future eventualities, the party seeking a modification of his obligation should be required to prove more than that the events anticipated have actually occurred.

4 V.I. at 421–22, 316 F.2d at 34–35 (citations omitted).

Viles, therefore, requires that a change of circumstances must be alleged, that the change must be "substantial and continuing," and that the change must be unanticipated. Viles also says that it is proper for the court to consider an original decree as being anticipatory in nature, tending to foresee and provide for many of the predictable changes that divorced parties experience, unless the four corners of the decree indicate a contrary intent.

## B.

█ Under the Viles analysis, the attainment of majority by Alexander Emanuel is *not*, in and of itself, sufficient cause for the prayed-for reduction. Even if a reduction of those payments were in order, the emancipation standing alone would not justify a pro rata reduction by one-third of the current obligation. First, the event is not unanticipated. The growth into adulthood of the three Emanuel children certainly was within the purview of the court when, in 1970, it decreed a fixed support sum without authorizing any reduction as each child became emancipated.

111

In addition, there is substantial authority for not allowing an undivided or unallocated child support award to be subject to automatic proportional modification based solely on the attainment of majority by one of several children. In McDaniel v. McDaniel, 288 So.2d 86 (La. App. 1974), the Louisiana Court of Appeal considered a motion for a one-third reduction of a lump sum support award where the eldest of three children had attained majority. Affirming the trial court's refusal to modify, the court said:

> Because one child reaches the age of majority does not necessarily result in a reduction of a proportionate share of the support award. The age of the other children, as well as other circumstances must again be reevaluated. . . . In oral reasons, the judge indicated that he must consider the rise in cost of living and its effect on the increasing costs for the support of children.

288 So.2d at 87. The court considered the cost of living, certain unusual medical expenses, and the ages of the remaining minor children. The court then affirmed a reduction from $175.00 per month to $170.00 per month for the support of the two children.

A Missouri appeals court held that a divorce decree that fixed a single monthly sum to be paid for the benefit of two or more children required payment of the *entire sum* until the youngest living child reached majority. Gordon v. Ary, 358 S.W.2d 81 (Mo. Ct. App. 1962).

> . . . [N]o mechanical or pro rata adjustment ought to be presumed to have been intended or contemplated as each child reached majority or becomes emancipated, and any proposed modification should be addressed to the discretion of the court which *as the facts then appear* can make such modification, if any, as is appropriate.

Id. at 83 (emphasis by the court). The court discussed the unreasonableness of a pro rata reduction of an undivided support award among individual children "for the reason that requirements of the individual child vary widely de-

112

pending on the age, sex, health, and other circumstances," id., and disallowed the reduction of lump-sum award payments by "mathematical" calculation because one of several children became emancipated. Other courts, while not squarely confronting the issue of pro rata reduction, have effectively disallowed it by affirming non-proportional modifications and by generally considering other circumstances as well as a child's majority. See, e.g., Riegler v. Riegler, 246 Ark. 434, 438 S.W.2d 468 (Ark. 1969); Beaird v. Beaird, 380 S.W.2d 730 (Tex. Civ. App. 1964); Anderson v. Anderson, 129 Cal.App.2d 403, 276 P.2d 862 (1955); Kahler v. Searl, 259 App. Div. 729, 18 N.Y.S.2d 246 (1940); Shapiro v. Shapiro, 256 App. Div. 838, 9 N.Y.S.2d 269 (1939).

Lezmore Emanuel's initial motion for reduction of support payments relied solely upon the emancipation of his oldest son. The court's announcement at the hearing that this factor could not independently support the plaintiff's motion prompted the plaintiff to adduce evidence concerning his ongoing financial difficulties. It is this evidence that the court next considers in determining whether the relief sought is appropriate.

## C.

The court has noted that the plaintiff on the date of the hearing was required to support the three children of his first marriage as well as his wife and children of a second marriage. The plaintiff is the natural father of two of the children of the second marriage. A significant issue of dispute was the extent to which the plaintiff's responsibilities to his current family should be considered.

There is a conflict among courts as to whether or to what extent remarriage should be considered in ruling on a request for modification of alimony or child support payments. See Annot., 6 A.L.R.2d 1277 (1949). Viles makes

113

it clear, however, that in this jurisdiction the financial burden resulting from the support of a second spouse cannot justify modification of a divorce decree. The court held that:

Appellee's . . . allegation that he must support a second wife does not change this conclusion [that the appellee did not provide a sufficient basis upon which the court properly could modify the original decree]. He cannot escape his obligation under the original decree by voluntarily assuming new domestic responsibilities which make performance more burdensome.

4 V.I. at 423, 316 F.2d at 35. Therefore, to the extent that Lezmore Emanuel's difficulties are attributable to the support of his second wife, this court believes it should refuse to consider them.

■ No denial of justice or equity is involved in establishing the obligations of the first marriage as primary and in requiring that they maintain their priority over a subsequent marriage. It would defeat the objective of Viles and endanger the rights and welfare of dependent spouses and children if a party was free to take leave of past familial responsibilities, however burdensome, for more attractive current and future ones. Moreover, the eldest of the three children in the plaintiff's home was brought to the marriage by the second Mrs. Emanuel. The court believes that as to this child, the same rationale must apply. The plaintiff and his new wife by their marriage made an informed decision to include him within their new household, a choice voluntarily made despite the financial obligations to the children of the first marriage. Viles holds, and the welfare of dependents dictates, that those who have been severed from their source of support by divorce should not be penalized by reduction of that support for the benefit of a later spouse or other children he or she may have.

114

Viles and its underlying policy fade in significance when considering support for the two children both of the plaintiff's second marriage. Obviously, the support of these two children was not a factor at the time of the 1970 decree.

These children are dependent upon their father for their sustenance and support. They have a fundamental right to that support, 16 V.I.C. § 342, and Lezmore Emanuel can be fined and imprisoned for his failure to provide it, 16 V.I.C. § 371. The children were not presented with alternatives as to their welfare or choice of home or parents, or for that matter as to their very existence. While it is clear that the plaintiff has faithfully attempted to provide for them, his tenuous hold upon financial solvency now threatens their welfare too.

Therefore, the court would be abandoning equity and common sense if it concluded that the obligations of Lezmore Emanuel to his first set of children should take precedence over his obligations to his second set of children. This court construes Viles as holding only that a husband cannot escape the obligations of a divorce decree by voluntarily incurring the obligation to support another wife. Moreover, Viles did *not* consider the children of a second marriage. Therefore, the court does not consider Viles controlling on the question of the support of children born of a second marriage.

## III.

The court thus turns to the evidence of the monthly expenses incurred by the parties in the ordinary course of raising children and maintaining a homestead. Even the most casual examination of these figures reveals that the plaintiff and his family have been living in forced frugali-

ty. This is in sharp contrast to the current standard of living being enjoyed by the defendant and her family.

Lezmore Emanuel testified to defaulting on several mortgage payments resulting in imminent foreclosure and the loss of his current home. He further testified to having found substitute lodgings for himself and his family, a $195.00 per month Tutu apartment.

The following figures reflect the monthly living expenses for Dr. Emanuel and his two children:

| | |
|---|---|
| Rent | $   195.00 |
| Telephone (with one extension) | 34.00 |
| Entertainment | 23.00 |
| Food | 380.00 |
| Car | |
| Gas and oil | 91.25 |
| Repair | 40.00 |
| Insurance | 16.66 |
| Clothing | 44.00 |
| Laundry | 25.60 |
| WAPA | 18.00 |
| Medical and dental | 40.00 |
| Housing and upkeep | 28.00 |
| Encyclopedia Brittanica | 23.00 |
| School tuition | 40.00 |
| Music and dance lessons | 40.00 |
| TOTAL: | $1,038.51 |

These expenses come to $12,462.12 per year.

The plaintiff also has wage assignments and voluntary payments of debts accruing from the failure of his business enterprise in 1972 and from other loans subsequent to that time. These debts include:

(1) A loan from Chase Manhattan Bank representing a refinancing of previous loans, and which currently is be-

ing repaid by alternate bi-weekly payroll deductions at the rate of $103.00 per month;

(2) A loan from the Small Business Development Agency of $25.00 per month, similarly being repaid by bi-weekly payroll deductions; and

(3) An intermittent good faith repayment of $50.00 on a $1,000.00 loan from a creditor and associate of the plaintiff.

In addition, of course, there are the court-ordered child support payments of $300.00 per month, and the arrearage payment of $50.00 per month, or an additional $350.00 per month, which also is being paid by alternate bi-weekly payroll deductions. These amounts total $528.00 per month in expenses (assuming monthly payment to the associate of the plaintiff) which, when added to FICA and health insurance monthly deductions of $90.40, yield a monthly obligation of $618.40 per month. Those monthly figures translate into yearly expenses of $7,420.80 for business and support matters.

The plaintiff, therefore, faces at a minimum $568.40 in monthly expenses for business and support debts, plus whatever he can pay towards the personal loan still outstanding. When the $1,038.51 in expenses associated with supporting himself and his two children by his second wife are included, he has a total obligation of $1,606.91 monthly, or $19,282.92 per year.

To pay these expenses the plaintiff currently has three potential sources of income. As a high school instructor he presently earns $16,660.08 per year. His actual take-home salary after deductions is $523.84 and $44.53 on alternate paydays, or $568.37 per month.[4]

The plaintiff currently rents a parcel of land belonging to him at No. 106 Hospital Ground, St. Thomas, to the

---

[4] The lower figure represents the remainder of plaintiff's paycheck after the monthly payroll deductions.

operators of a discotheque known as the "M & M Disco." The property has been leased since October, 1977, and has yielded $450.00 monthly for the months of October through December, 1977, and January and February, 1978. The plaintiff testified, however, that since 1971 he has enjoyed only intermittent income from this property, and that lessees have often in the past lasted only a few months before defaulting in their rental payments. Nonpayment of rent in the past has necessitated frequent legal action on his part. While plaintiff cannot foresee the behavior of his present tenants, his experience with past tenants and with the transient, "fad" appeal of discotheque establishments generally lead plaintiff and the court to discount this source of income as yielding any more than about four to six months' rent, or $1,800.00 to $2,700.00 per year. The court accepts these two figures and will use an average of the two, or $2,250.00 per year.[5]

The third potential source of income for the plaintiff is the salary of his wife. Mr. Emanual emphasized, however, that his wife's income was not utilized for his support or for any of the living expenses itemized supra. While the precise details of Mrs. Emanuel's position and salary were not revealed, the plaintiff testified that money from that source has only been used to pay for occasional vacations for the family, and for incidental expenses at the option of Mrs. Emanuel or in the face of absolute necessity. Her income also is used for her living expenses and to support the child she brought to the marriage with Dr. Emanuel. Moreover, nothing was adduced on cross-examination of the plaintiff or by defendant in presenting her case to

---

[5] Better management should result in increased income for the plaintiff as well as greater utilization of his property. The plaintiff's track record, however, does not at this time warrant the court finding that this source will be significantly greater in the near future. Even if it does increase significantly, the court's final determination is not such that this alone would justify another modification.

show that the present Mrs. Emanuel's income is available to do any more than testified to by Dr. Emanuel. Accepting that at face value, Dr. Emanuel's yearly salary of $16,-660.08 combined with his projected rental income of approximately $2,250.00 will produce a total *gross* yearly income of approximately $18,910.08 to be applied against annual expenses of $19,282.92. The last figure does not include any loan payments to his former associate.

■ Even were Dr. Emanuel to receive this entire amount in gross, the figures indicate that he has no room for incidental or emergency expenses or expenses not included within these rough estimates, or for inevitable cost-of-living increases. Moreover, the budget of the plaintiff is virtually barren of luxury or indulgence. Rising costs and taxes being certainties, it is the conclusion of the court that the plaintiff has insufficient income to maintain the current child support schedule of $350.00 per month.[6] Although there was no testimony as to his actual income and expenses during 1970, the time of the divorce, this court cannot believe that any judge of this court would have ordered an individual to make support payments that would have the effect of causing a person to pay more than his entire *gross* income to meet his obligations. Thus, the court finds that there has been a substantial and continuing change in Dr. Emanuel's circumstances.

Even if Dr. Emanuel had the ability to meet these obligations, they would have to be considered extraordinary and inequitably burdensome when compared with the defendant's present circumstances.

■ The defendant, now Mrs. Waters, as her name indicates, has remarried and receives sizeable contributions

---

[6] While some of the expenses, such as the expense for gas and oil and auto repair appear to be high, they are not such as to appreciably affect Dr. Emanuel's ability to meet his needs and those of his present and former families.

for the support of her children and home from her present husband. It is the general rule that while the remarriage of a wife does not preclude the continuation of alimony payments from her former husband, the fact of remarriage may be considered in support of modification of such payments. See, e.g., Zalka v. Zalka, 100 So.2d 157 (Fla. 1958); Anderson v. Anderson, supra; Kahler v. Searl, supra; Annot., 6 A.L.R.2d 1277 (1949). The court finds relevant, therefore, the fact that the defendant's remarriage has resulted in a significant economic benefit to her. Mrs. Waters testified that her present husband earns in excess of $17,000.00 per year at the College of the Virgin Islands. The defendant also earns approximately $17,000.00 per year as an accountant with the Virgin Islands Department of Health. These combined salaries, added to the $350.00 monthly contribution by the plaintiff towards support of the children in the Waters home, yields the Waters family approximately $38,200.00 in gross annual income.

The court had great difficulty eliciting from the defendant an estimate of the costs that the Waters family regularly incurs. Nevertheless, testimony from the defendant produced the following monthly costs and expenses:

| | |
|---|---|
| Mortgage (First and Second) | $ 550.00 |
| Phone | 25.00 |
| Food (at $125.00 per person) | 500.00 |
| Car | |
|   Gas and oil | 60.00 |
|   Repairs | 110.00 |
| Insurance (at approximately $220 per year) | 18.33 |
| Water and laundry | 113.00 |
| WAPA (very minimum figure) | 125.00 |

| House maintenance | 100.00 |
|---|---|
| TOTAL: | $1,601.33 |

This comes to $19,215.96 per year. The defendant also claimed that the following monthly costs were specifically attributable to support of the two remaining minor children of her marriage to Dr. Emanuel:

| Tuition for two children | $ 63.75 |
|---|---|
| Allowance (at $20 per week) | 80.00 |
| Clothing | 135.00 |
| Dental (at $515 per year) | 44.58 |
| Hair and hygiene | 40.00 |
| Music lessons | 50.00 |
| Entertainment | 50.00 |
| TOTAL: | $463.33 |

This amounts to $5,559.96 annually. These amounts, when combined, yield a figure for *basic* expenses for the entire family of $2,064.66 monthly, or $24,775.92 annually. That figure does not include clothing, hygiene or entertainment for defendant or her husband. On alternative bi-weekly pay periods there are the following deductions:

(1) $344.00 to pay a mortgage held by Chase Manhattan Bank;

(2) $60.00 installment payment on a $1,000 credit union loan, $250.00 of which is actually deposited in a savings account;

(3) $135.36 towards a retirement loan refinanced in 1977; and

(4) Health and life insurance deductions of approximately $61.00.

These sums, exclusive of the previously included mortgage payments, total $256.36 per month for an annual obligation of $3,076.32 towards repayment of loans. The defendant's current estimate of liabilities, therefore, totals:

| | |
|---|---|
| Living expenses | $24,775.92 per year |
| Loan payments | 3,076.32 per year |
| **TOTAL:** | $27,852.24 per year |

The defendant also listed a number of debt obligations, most of which refer to the period between her divorce and remarriage, when defendant's failure to pay alimony forced her into debt to support the parties' three children. In addition, she testified that she borrowed between $9,000.00 and $10,000.00 from her family, a sum still outstanding, which she feels morally obligated to pay. There were additional unspecified loans that the defendant stated either had been repaid or that she could not recall.

As noted, this accounting of expenses is incomplete. These ambiguities and omissions notwithstanding, the court nevertheless draws several conclusions. The first is that Mr. and Mrs. Waters, and specifically the two children of Dr. Emanuel, Anthony and Aleric, live comfortably. The Waters' house is spacious. The testified entertainment expense of $50.00 per month for the children is generous. The $10.00 weekly allowance given each child also is generous, especially considering the entertainment allowance. The clothing costs for the two minor children of $135.00 monthly, which Mrs. Waters testified included two pairs of sneakers per week, is excessive; certainly it is luxurious when compared to the situation of Dr. Emanuel and his children by his second marriage. Anthony and Aleric's health needs, education, and indulgences have been well attended. Clearly, Mrs. Waters' love for her chil-

dren is reflected by her desire to see that they are provided for as best as she can.

The defendant demonstrated at trial her determination that her children be well taken care of. She testified that before her remarriage, when she received a lesser salary —between $13,000.00 and $14,000.00 per year—she worked several jobs simultaneously and borrowed heavily in order to maintain a high level of living and to provide a quality education for the children. However, she said a heart condition presently prevents her from holding more than one job. Mrs. Waters' ability to reduce her work time without a loss of income and without sacrificing any of the comforts and privileges to which she and her children have become accustomed is a compelling indication that the financial status of mother and children is secure. In addition, since the divorce, significant expenses have been eliminated. At the time of her divorce from Dr. Emanuel, the defendant testified to annual tuition payments of $3,000.00 per year. The current obligation of $765.00 per year in tuition fees represents a reduction of more than two-thirds of that expense, a reduction partly attributable to the completion of secondary schooling by Alexander. Expenses for a maid of $1,800.00 per year at the time of the divorce, then necessary because of the defendant's long working hours and the tender ages of the children, are no longer incurred. Expensive medical treatment for an allergic condition of one of the children, estimated at $500.00 per year, is no longer necessary.

In sum, the testimony of the defendant confirms that her financial position has vastly improved since her divorce, and that the emancipation of her eldest son has significantly added to that improved state of affairs. The court also notes that two significant sums listed as expenses—the mortgage and insurance payments—are creating an equity for Mr. and Mrs. Waters and the three chil-

dren. This investment eventually will offset current costs and guarantee future security. The court must conclude, therefore, that events subsequent to the divorce decree of April 14, 1970, have placed Mrs. Waters and her two minor children in a sound financial position and in a secure home environment, and that while the support of the plaintiff aids those children, their present and future support does not mandate a continuation of the present level of payments.

By contrast, the plaintiff and his family now are and continuously have been subject to severe financial hardships. These difficulties have resulted in significant deprivations for his two children by his current wife. The disparity between the Emanuel and Waters households is evident in a comparison of almost any expense to which both households are subject. While plaintiff did not specify the kind of apartment he will be renting for $195.00 per month, the residence will definitely *not* be a landscaped, four bedroom, three bathroom home like the defendant currently enjoys. The defendant has seen an almost 25 percent increase in her salary since the divorce, and has continuously held a job. The plaintiff now earns less than he did in his teaching position at the College of the Virgin Islands seven years ago, and has been unemployed for long periods. While the expenses the defendant faces have decreased, especially since the emancipation of Alexander, the costs of the plaintiff have dramatically increased with the birth of two more children. While defendant has steadily contributed towards an equity security, the plaintiff faces the loss of his home. It is the children upon whom the burden of the disparity finally rests. In effect, Anthony and Aleric Emanuel have been supported in the Waters home at the expense of Dr. Emanuel's two children by his second wife. This undue hardship cannot be fostered simply to preserve the provisions of the original decree.

124

■ Considering the emancipation of Alexander Emanuel, the financial state of the defendant and the ongoing financial problems facing the plaintiff, the court concludes that the current payroll deductions of $350.00 per month for past and present child support are excessive, and should be reduced to $300.00 per month. Of this amount, $230.00 shall be applied to current support obligations and $70.00 applied towards arrearages.[7]

## IV.

Plaintiff, in addition to requesting a reduction of his present obligation, seeks a reduction that would apply retrospectively so as to reduce his arrearage. While no previously reported case in this jurisdiction provides authority for such a reduction, a review of decisions of other courts possessing similarly broad powers to modify divorce decrees reveals a general acceptance of the doctrine of retrospective modification.

■ In Brandt v. Brandt, supra, the Supreme Court of Oregon interpreted a statute authorizing Oregon courts to "set aside, alter or modify" the provisions of a divorce decree as authorization to cancel overdue support installments. The court found the presence of the phrase "to set aside" to be a specific source of authorization for a divorce court to modify its decrees retrospectively. The court also found the phrase synonymous with the words "to annul, to make void," suggesting that the cancellation of overdue support payments was an authorized setting aside of a decree. Id. See also Scudder v. Scudder, 11 Alas. 303, 6 A.L.R.2d 1277, 1292 (D.C. 1947). This court adopts the

---

[7] The Court initially at the March 2, 1978, hearing, ordered a reduction in the current support by $50.00 to $250.00 per month. A review of the facts as outlined herein indicates that a contribution of $230.00 per month would be more in keeping with the statutorily mandated support obligation envisioned by 16 V.I.C. § 342 and § 345. See Laurent v. Laurent, Fam. No. 354/1978 (Terr. Ct., Div. St. Croix, Nov. 21, 1978) (Silverlight, J.).

125

Brandt court's reasoning, and concludes that 16 V.I.C. § 110 makes alimony and support payments of a divorce decree subject to retrospective change or cancellations. Of the statutes that authorize courts to "annul" or "set aside" orders for support payments, only Rhode Island does not follow the Brandt interpretation allowing retrospective modification.[8] See Annot., 6 A.L.R.2d 1277, 1287–93 (1949).

This court, in adopting an interpretation favoring retrospective modifications of support obligations, emphasizes that such an interpretation is to be applied only when the court finds it equitable to adjust the responsibilities of divorced parties brought about by substantial changes in circumstances that follow the divorce. The discretionary power to cancel arrearages should be exercised cautiously. 6 A.L.R.2d 1277, 1294.

■ The facts adduced in the present case are compelling and clearly require a retrospective reduction of the plaintiff's child support obligations. Although the plaintiff in his December 13, 1977, motion for reduction in child support sought a retroactive reduction only until December 19, 1976, the date Alexander reached majority, this court will make its order retroactive to May 1, 1974. Pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, a party shall receive the relief to which he is entitled,

---

[8] In Rhode Island, a statute authorizing the court "to alter, amend and annul" a child support decree was held not to authorize a cancellation or setoff of arrears. Gilbert v. Hayward, 37 R.I. 303, 92 A. 625 (1914). Courts in Alaska, Scudder v. Scudder, 11 Alas. 303, 6 A.L.R.2d 1277, 1292 (D.C. 1947), New Jersey, Madden v. Madden, 136 N.J.Eq. 132, 40 A.2d 611 (1945), and New York, Karlin v. Karlin, 280 N.Y. 32, 19 N.E.2d 669 (1939), have interpreted the phrases "to set aside" or "to annul" as an authorization to cancel or reduce alimony and/or support payments. The history of the New York rule emphasizes the specific power that these terms grant to the court. There the courts have allowed retrospective modification, notwithstanding a decision by the U.S. Supreme Court denying the validity of such modification, Sistare v. Sistare, 218 U.S. 1 (1910), on the grounds that the High Court incorrectly quoted, and interpreted, the statutory power as being to "vary or modify," whereas the true power then was to "*annul*, vary or modify." (Emphasis added.)

even if he has not demanded such relief in his pleadings.[9] In this case, the court believes that Lezmore Emanuel is entitled to this relief.

As stated, on April 9, 1974, Dr. Emanuel filed a verified motion with this court attesting that he had lost his position with the College of the Virgin Islands, and was unable to find employment other than at various odd jobs, and praying for a reduction of his child support payments. For some inexplicable reason, this motion never received a hearing. That Dr. Emanuel then lacked the means to meet his support obligations under the 1970 decree is obvious, and is borne out by the huge arrearage that he has accumulated since then. The court believes that had Dr. Emanuel been given the opportunity to be heard and to present evidence that he could have met the Viles test of a substantial change in circumstances and that he would have prevailed on his motion.

Moreover, aside from the above rationale, the court finds that Dr. Emanuel's continued liability for the entire arrearage is inequitable and unjust in light of the parties' present circumstances. To paraphrase another court's decision, Dr. Emanuel has faced more than his full share of human disappointment and adversity. His unfortunate financial condition, in this court's opinion, is not due to a desire on his part to avoid his liability, but rather to circumstances beyond his control. Cf. Sivertsen v. Sivertsen, 198 Minn. 207, 269 N.W. 413 (1936).

For all of the foregoing reasons, the order of this court reducing the plaintiff's child support obligations by $70.00 shall be made retroactive to May 1, 1974.[10] The accrued

---

[9] The Federal Rules of Civil Procedure, including Rule 54, are made specially applicable to domestic relations matters in this jurisdiction. See 5 V.I.C. App. V, R. 10.

[10] Pursuant to this court's Order of June 25, 1971, payments were to be made on the 1st of every month. May 1, 1974 is the first payment date after the plaintiff's April 9, 1974 motion to amend the judgment.

arrearage will thus be reduced by $3,220.00.[11] Moreover, to allow the parties to plan for the future and obviate still further motions for modification, as of December 3, 1980, the date of Anthony Emanuel's majority, the plaintiff's monthly support obligations, independent of the arrears, shall be further reduced to $150.00 per month. Viles v. Viles, supra.

## V.

The court, in conclusion, emphasizes the distinction between the child support currently payable—which it has found to be excessive—and the outstanding arrearage that the plaintiff has allowed to accrue in the eight years subsequent to his divorce from the defendant. An examination of the plaintiff's current debt obligations reveals that at least one loan currently being paid by a payroll deduction —the Chase Manhattan Bank loan, which is being repaid at $103.00 per month—is to be fully repaid in the near future.[12] The amount being paid against the outstanding arrearage shall thereafter be increased to $120.00 per month when that loan is fully satisfied. This measure will more than double the rate at which the arrearage currently is being reduced while at the same time somewhat alleviating the financial constraints under which the plaintiff and his family now labor.

---

[11] This figure was derived by multiplying $70.00 by 46, the number of months from May 1, 1974 until March 2, 1978, the date of the hearing on the plaintiff's present motion. All sums paid since March of 1978 in excess of $230.00 per month shall also be credited to plaintiff's arrearage. Upon motion, supported by affidavits, the court will fix the amount paid, and thus determine the arrearage still due to the defendant.

The retroactive reduction ordered by the court in this instance is far from exorbitant. Cf. Sivertsen v. Sivertsen, supra (where the Minnesota Supreme Court affirmed a lower court's cancellation of $7,200.00 of child support arrears); Ydrogo v. Ydrogo, 332 Mich. 530, 52 N.W.2d 345 (1952) (Michigan Supreme Court affirmed reduction of $3,500.00 in alimony arrears). See also Chipman v. Chipman, 308 Mich. 578, 14 N.W.2d 502 (1944).

[12] The plaintiff could not testify to the exact date the last monthly installment was due, but estimated it to be "within the year."

As a result, until satisfaction of the Chase loan, Dr. Emanuel shall pay $300.00 per month to Mrs. Waters, $230.00 for the current support and $70.00 towards the arrears. Upon satisfaction of the loan, the payment shall be increased to $350.00, of which $230.00 shall be for the current support of the children and $120.00 towards the arrears. After December 3, 1980, the date on which Anthony shall reach the age of 18, the payments shall be reduced to $300.00 per month, of which only $150.00 shall be for the current support of the minor, Aleric Emanuel, and the remaining $150.00 shall go towards the then remaining arrears.