**ELVIS MARSH, Appellant**
**v.**
**CHERISE CREQUE MARSH, Appellee**

D.C. Civ. App. No. 1993-179

T.C. Fam. No. D33-1987

District Court of the Virgin Islands

Div. of St. Thomas and St. John

November 8, 1995

VERA D. JEAN, ESQ., LAW OFFICES OF LEMUEL F. CALLWOOD, *for Appellant*

JOHN W. STRYKER, ESQ., D'AMOUR, JONES, STRYKER & DUENSING, *for Appellee*

MOORE, *Chief Judge,* District Court of the Virgin Islands; FINCH, *Judge of the District Court of the Virgin Islands;* and PATRICIA D. STEELE, *Judge of the Territorial Court of the Virgin Islands,* Division of St. Croix, Sitting by Designation.

## OPINION OF THE COURT

In this appeal of a divorce action, Elvis Marsh ["appellant"] challenges the Territorial Court's ruling that it could not amend or modify the property distribution portion of a final decree of divorce. Appellant also challenges the court's determination of the fair market value of the marital homestead, contending that the judge improperly considered an appraisal which was considerably higher than two other appraisals of the same property. For the reason's stated herein, the trial court's decision is affirmed.

## FACTS

Appellant and Cherise Creque Marsh ["appellee"] were married on June 5, 1982 and one child was born as a result of the union. On June 29, 1987, the Territorial Court entered a divorce decree that addressed the issues of custody, visitation, child support and rehabilitative alimony. Property distribution was put off until an August 27, 1987 hearing, at which it was established that the property on which the marital homestead was built, Parcel No. 8-1 Estate Carolina, St. John ["Parcel 8-1"], was acquired by appellant before the marriage from his aunt. Finding nevertheless that each party had contributed equally to the construction of the house, the trial judge initially distributed the homestead by awarding each party a fifty percent interest in all of Parcel 8-1. Upon appellant's protestations that he alone provided all the land on which the house was built, the court reconsidered its division of the property to separate out the homestead, to which appellee had contributed

equally, from the rest of the land. In a February 3, 1988 order, the judge modified the distribution and directed that the property be subdivided into two parcels and distributed as follows: one parcel ["Lot A"] of no less than one acre and the house to appellant and appellee equally; and the remainder of Parcel 8-1 ["Lot B"] to appellant solely.

The modified order gave appellant twenty-four months from August 27, 1987 to exercise a right of first refusal to buy out appellee's interest in Lot A, during which time Mr. Marsh was also awarded sole possession of the marital abode. To determine the market value of Lot A, the judge ordered each party to obtain an appraisal, unless they could agree on the selection of one appraiser. If each party employed a separate appraiser, the two appraisers would select a third, and the three appraisals would be averaged to establish the fair market price of Lot A.

Appellee selected Frank Gordon as her appraiser and in an appraisal report dated August 2, 1990, Mr. Gordon valued the property at $348,000 ["Gordon appraisal"]. On November 30, 1990, appellee moved for a determination of the value of her interest in Lot A, to which appellant did not respond. The judge entered an order on August 19, 1991, valuing appellee's one-half interest in Lot A at $174,000 — one-half of the Gordon appraisal — the only valuation before the Court. Appellant objected and contended that Gordon's estimation of Lot A's value was exorbitant, which he supported by presenting an appraisal by Elissa Rock Runyon. *See infra* note 1. On January 2, 1992 the Court visited the marital homestead and, in an order dated February 18, 1992, vacated the August 19, 1991 valuation and ordered the parties to select a third appraiser within fifteen days from the date of the order. After the parties represented to the trial judge that they could not agree on the appointment of the final appraiser, the trial judge selected Beatrice George to appraise the property. Ms. George submitted an appraisal report dated June 18, 1992, valuing the property at $140,000 ["George appraisal"].

In an order dated September 1, 1992, the trial court accepted the George appraisal of $140,000 as the appraisal which most accurately reflected the value of the property and valued appellee's interest in Lot A at $70,000. Appellee moved to reconsider based on

the trial court's failure to follow the February 3, 1988 property distribution order which indicated that if three appraisals were submitted, the fair market value of Lot A would be determined by averaging the three appraisals. At a hearing on November 25, 1992, each party had an opportunity to examine the appraisers under oath to determine the bases for their appraisals. Mr. Gordon, the only appraiser whom the parties chose to question at the hearing, lowered his valuation of the property from $348,000 to $290,000. In an order dated December 8, 1992, the judge determined appellee's interest in Lot A to be $91,666.66 by averaging the three appraisals and then dividing the average by two.[1] Appellant's motion to reconsider was denied on May 14, 1993. Although both parties appealed the December 8, 1992 order, only Mr. Marsh proceeded on his appeal.[2]

## DISCUSSION

Appellant raises two issues in this appeal: whether the trial judge erred (1) in holding that he was not authorized to modify the property distribution portion of a final decree of divorce, and (2) by considering an appraisal which is considerably higher than either of the other two appraisals.

Our review of the court's statutory interpretation of V.I. CODE ANN. tit. 16, § 110 is plenary. Nibbs v. Roberts, 31 V.I. 196 (D.V.I. APP. Feb. 8, 1995); *In re Barrett*, V.I. BBS 91CI159A.DX2 (D.V.I.APP. Jan 31, 1995). However, the Territorial Courts' findings of fact are not to be set aside unless they are clearly erroneous. 4 V.I.C § 33. A finding is clearly erroneous when, although there may be some

---

[1] In the order dated December 8, 1992, which is the subject of this appeal, the trial court used the figure of $115,000 ($65,000 plus one-half of $100,000) as Runyon's valuation of Lot A even though her April 13, 1985 appraisal stated a value of $65,000 for only the improvements. The judge added $50,000 land value (one-half of $100,000 for both lots A and B) to the $65,000 for improvements to arrive at the $115,000 figure. Appendix ["App."] at A-43, A-134.

While reviewing the Territorial Court's calculations, we find an inadvertent arithmetical error; the corrected value of appellee's interest in Lot A, using the Territorial Court's determination, is $90,833.33 (140,000 + 290,000 + 115,000 = 545,000; 545,000/3 = 181,667; 181,667/2 = 90,833.33).

[2] The record reflects that the original trial judge, the Honorable Ishmael Meyers, recused himself from this case on March 12, 1991. App. at A-72. The Order dated December 8, 1992 by his replacement, Judge Ive A. Swan, is appealed here.

evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made after looking at all of the evidence. *Stridiron v. I.C., Inc.*, 20 V.I. 459, 462 (D.V.I. App. 1984)(quoting *United States v. Gypsum Co.*, 333 U.S. 364 (1947)).

## A. Modification of Divorce Decree

Appellant concedes that section 110 does not specifically provide that a court may amend or modify the distribution of the marital homestead in a divorce decree.[3] Appellant nevertheless argues that the omission of this subject from section 110 does not necessarily evidence an intent by the Legislature to prohibit a court from amending or modifying the distribution of the marital homestead under this section. We do not agree.

■ ■ The aspects of a divorce decree a judge is allowed to amend or modify under section 110 are those which one might expect to require modification as the needs and resources of the parties change over time. The marital homestead itself is not such a mutable factor and, as one might expect, is not mentioned in section 110. In fact, no section of the chapter on Divorce and Annulment of Title 16, the Domestic Relations title of the Virgin Islands Code, mentions or authorizes the division and distribution of property in a divorce proceeding.[4] Accordingly, there is no basis

---

[3] V.I. CODE ANN. tit. 16, § 110 provides that:

At any time after a judgment is given the court, upon the motion of either party on notice, may set aside, alter or modify so much of the judgment as may provide alimony or for the appointment of trustees, for the care and custody of the minor children, or the nurture and education thereof, or the maintenance of either party in the action.

[4] Appellant has not presented any legislative history to indicate that the Legislature intended to allow a divorce court to amend or modify a distribution of a marital homestead under section 110, or any other section of Title 16 of the V.I. Code. If the Legislature intended for distribution of the marital homestead to be included among the bases which can be modified under section 110, it could have expressly provided for such inclusion. Not having done so, we will not assume that the Legislature meant to include it.

As previously observed by this appellate tribunal, "[c]ourts presume that the legislature expresses its legislative intent through the ordinary meaning of the words it chooses to use, and if the statutory language is clear, it is not necessary to look for congressional intent from legislative history. The plain meaning of the words ordinarily is regarded as conclusive . . . ." *HOVIC v. Richardson*, V.I. BBS 93CI261A.DX1 (D.V.I. App. June 20, 1995) *amended for other reasons* V.I. BBS 93CI261A.DX3 (D.V.I. App. Aug. 11, 1995). Here, the language of the statute is clear and unambiguous.

for us to import into section 110 any authority to deal with property distribution.

If the trial judge was limited to 16 V.I.C. § 110 as the only provision under which to amend or modify the February 3, 1988 property distribution order, we would wholeheartedly agree with the conclusion that the property distribution could not be modified. However, distribution of the marital homestead is provided for in Title 33 of the V.I. Code, dealing with taxation. 33 V.I.C. § 2305(d). We therefore examine the terms of section 2305(d) to see if it allows modification of a disposition of a homestead.[5]

■■ Section 2305(d) directs that "the court which grants [a divorce] shall make disposition of the homestead in accordance with the equity of the case." The homestead is defined in section 2305(a) as "the abode including land and buildings, owned by, and actually occupied by, a person, or by members of his family free of rental charges." Since a divorce court has broad equitable power under section 2305(d) to dispose of the marital homestead in the first instance, it necessarily follows, and we so hold, that a divorce court has equally broad power to modify a disposition of the marital homestead when equity requires it. *See Roberts v. Roberts*, 26 V.I. 92, 95 (Terr. Ct. 1991)(citing *Stridiron v. Stridiron*, 698 F.2d 204 (3d Cir. 1983); *Charles v. Charles*, 788 F.2d 960, 963 (3d Cir. 1986)). As a matter of fact, another judge in this very case had earlier used his equitable power to modify the initial distribution of the marital homestead because it would have lead to an unequitable result. Appellant is thus correct that the trial court had the authority to modify an earlier property distribution, but under 33 V.I.C. § 2305(d), not pursuant to 16 V.I.C. § 110.

## B. Value of Marital Homestead

Since we find that the trial judge made an error of law in holding that he was not authorized to modify the February 3, 1988 property distribution order, we next consider whether that legal error resulted in a clearly erroneous conclusion in this case. Appellant

---

[5] While it appears that appellant did not cite section 2305(d) to the trial court, our review of the trial court's construction of law is plenary and not limited to the particular code sections cited to the lower court.

contends that the Gordon appraisal was "clearly exorbitant" and therefore, should have been rejected.[6] This presupposes that the Gordon appraisal should have been rejected. As we do not agree, we conclude that there was no reason for the judge to modify the February 3, 1988 order and his failure to exercise his authority to do so was therefore not clearly erroneous.

██ Mr. Gordon's valuation of $290,000 for the marital homestead is much higher than the two other valuations of $115,000 and $140,000. In determining the fair market value of a piece of property, a court need not adopt the conclusions of any particular appraisal report. The trial judge conducted an evidentiary hearing on November 25, 1992 for the express purpose of determining the reasonableness of the appraisal reports. Appellant was given the opportunity to examine all the appraisers on their qualifications and the methodology they used to determine the value of the marital homestead. He chose only to question Mr. Gordon. Based on the reports and the evidence adduced at the hearing, the trial judge accepted the Gordon appraisal because appellant failed to establish that it was unreasonable. Thus, the court did not have any reason to modify the February 3, 1988 Order.

After thus reviewing all the evidence, we are not left with a firm and definite impression that the trial court made a mistake in using the Gordon appraisal in its determination of the fair market value of Lot A. It is up to the trier of fact to accord the appropriate weight to the evidence and appellant failed to establish that the trial court's finding with respect to the Gordon appraisal was clearly erroneous. Accordingly, we affirm the judge's use of the Gordon appraisal in determining the value of Lot A.

## CONCLUSION

We hold that pursuant to the broad equitable powers conferred by 33 V.I.C. § 2305(d), a divorce court has discretion to amend or

---

[6] Appellant points to several errors in the Gordon appraisal and notes that the report indicates that the house is 2 stories rather than 1.5 stories as expressed in the other two appraisals, that the property is in an R-2 zone rather than its actual R-1 zoning, that the house is 100% masonry rather than a combination of masonry and wood, and that the land is mostly level and grassy rather than its actual gradual to steep slope. However, these factors had already been taken into consideration by the trial judge in deciding whether to accept the Gordon appraisal.

modify a distribution of the marital homestead. Because appellant failed to establish that the Gordon appraisal was unreasonable, we find no error in the trial court's use of the Gordon appraisal to determine the fair market value of the marital homestead. Accordingly, the Territorial Court's decision is affirmed using the corrected figure of $90,833.33;[7] an appropriate order will be entered.

## ORDER

AND NOW, this 8th day of November, 1995, after careful review of the record and having considered the submissions and arguments of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED:

THAT the Territorial Court's Order dated December 8, 1992 is MODIFIED to the limited extent that the last paragraph on page three of the Order should be corrected in to reflect that "the value of the parties' former marital home at No. 8-1 Estate Contant, St. John, Virgin Islands is $181,666.67, with each party's share and interest therein assessed at $90,833.33. The Order is otherwise AFFIRMED.

---

[7] *See supra* note 1.