Linda J. MILES, Respondent,

v.

Donald G. MILES, Appellant.

No. WD 58303.

Missouri Court of Appeals,
Western District.

March 27, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 1, 2001.

John R. Shank, Jr., Kansas City, for appellant.

Howard D. Lay, Kansas City, for respondent.

Before SMART, Presiding Judge, ELLIS, Judge, and LAURA DENVIR STITH, Judge.[1]

ELLIS, Judge.

Donald Miles (Husband) appeals from a trial court judgment amending a Qualified Domestic Relations Order (QDRO) previously entered in the dissolution decree be-

1. Judge Laura Denvir Stith was a member of this court and a member of the division of the court that heard this case at the time of submission. She was reassigned to the case after her appointment to the Supreme Court of Missouri to participate in disposition of the appeal.

tween Mr. Miles and his ex-wife, Linda Miles (Wife). The amended QDRO effectively grants Wife fifty percent (50%) of the supplemental benefits Husband is receiving from the General Motors (GM) pension plan for his early retirement.

Husband and Wife were married on December 15, 1969. A dissolution decree was entered on July 7, 1992, dissolving the marriage.[2] In the dissolution decree, the trial court adopted a separation agreement entered into by the parties on July 2, 1992. The parties agreed, in the separation agreement, that Husband would receive the right to withdraw a lump sum in the amount of $10,205.00 from Wife's employment profit sharing benefits. In return, Wife did not seek maintenance, but the parties agreed Wife would receive as her sole and separate property, "One-half (½) of HUSBAND'S General Motors pension plan as of the date HUSBAND actually retires or ceases to accrue benefits." The Court simultaneously entered a QDRO in which it declared that Husband "has agreed to assign to [Wife] a portion of his vested pension benefits in the General Motors Retirement Plan," and the Court divided Husband's pension/retirement plan as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Husband's] pension/retirement plan shall be divided pursuant to the Qualified Domestic Relations Order entered by this Court simultaneously with this Decree of Dissolution of Marriage, setting aside to [Wife] fifty percent (50%) of [Husband's] total vested interest in and to his pension retirement plan with General Motors Corporation as of the date [Husband] actually retires or ceases to accrue benefits.

The QDRO spoke to early retirement by stating, "Consistent with the terms of the aforementioned Plan, [Wife] shall have the right to elect to receive benefits at or after [Husband] having (sic) reached early retirement age as defined in the Plan." The QDRO was thereafter approved as "qualified" by the pension plan administrator.

In 1998, after thirty years of service, Husband took early retirement from GM. If Husband had continued working at GM until reaching age 62 and one month, he would then be eligible to retire and collect full retirement benefits. Because he retired early, Husband was not entitled to receive full retirement benefits. Instead, Husband began collecting a portion of the GM basic benefits, reduced for age, coupled with a supplemental benefit designed to increase Husband's total monthly benefit amount to a certain level until he attains age 62 and one month, and is eligible for full retirement benefits. The total amount of benefits from the GM Fund was $2,429.95 per month. The pension plan administrator allocated $2,233.18 of that income to Husband per month, and $196.77 to Wife per month.[3] Because she believed she was entitled to 50% of $2,429.95, the total amount available per month, Wife filed a "Motion to Amend Qualified Domestic Relations Order...or to correct the QDRO Order Nunc Pro Tunc." Approximately eight months later, Wife filed an amended motion adding a count for equitable relief in addition to the relief sought in her original motion.

A hearing was held on January 19, 2000. On February 4, 2000, the trial court entered a Judgment, styled "Judg-

---

**2.** At the time the dissolution decree was entered, Husband was not retired, nor was he eligible for retirement.

**3.** We assume that one-half of Husband's basic benefit, reduced for early retirement age, totals $196.77 per month and this constitutes Wife's allocation from the plan administrator.

ment on Motion of Petitioner to Amend Qualified Domestic Relations Order Dated July 7, 1992," and an Amended QDRO, changing the language of the original QDRO to read, "[Husband] has agreed to assign to [Wife] *a 50% portion of his pension benefits and 50% of any early retirement supplement, interim supplement or temporary benefit in the General Motors Retirement Plan.*" (emphasis added). The Court went on to say the Pension Plan Administrator was required to pay Wife a portion of the benefits as outlined below:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Husband's] pension/retirement plans shall be divided pursuant to the Qualified Domestic Relations Order entered by this Court simultaneously with this Decree of Dissolution of Marriage, setting aside to [Wife] fifty percent (50%) of [Husband's] interest in and to his pension/retirement plan with General Motors Corporation as of the date [Husband] actually retires or ceases to accrue benefits. *[Wife] is entitled to a share of any early retirement supplement; interim supplement or temporary benefit. [Wife's] share of said benefit is proportional to [her] interest in [Husband's] total accrued benefit.*

(emphasis added). The Court attached an Amended QDRO to its judgment and made the Amended QDRO order retroactive to July 7, 1992, the date the original QDRO was entered. In the Amended QDRO, the Court found amendment was necessary, as it was the original intent of the parties and the Court to give Wife 50% of the supplemental benefits Husband receives as part of his early retirement program. Husband appeals this determination.[4]

Husband raises two points of error in his appeal. First, he contends that the trial court's judgment did more than merely correct the court's record, and therefore cannot be sustained as an order *nunc pro tunc.* Secondly, Husband contends the circuit court erred in modifying the QDRO because the court had no jurisdiction to redivide the property division made in the dissolution decree and original QDRO. In this second point, he claims the trial court had no jurisdiction to modify the QDRO under § 452.330.5[5] or through equitable relief.

Wife's motion was styled "Motion to Amend Qualified Domestic Relations Order Dated July 7, 1992 or Correct the QDRO Order *Nunc Pro Tunc.*" The trial court's judgment was designated "Judgment on Motion of Petitioner to Amend Qualified Domestic Relations Order Dated July 7, 1992." While the trial court's judgment no where suggests that it is a *nunc pro tunc* order, in an effort to cover all bases, Husband contends that if the judgment was construed as an order *nunc pro tunc,* it was error because the order goes beyond a mere correction of the court's record.

We need not address this issue because the judgment does not purport to be an order *nunc pro tunc,* and is clearly a judgment modifying a QDRO pursuant to § 452.330.5. Accordingly, we turn to Husband's second point, in which he contends the court lacked jurisdiction to modify the QDRO either equitably or under the provisions of § 452.330.5.

■ Generally, the distribution of marital property constitutes a final order and is

---

4. Wife filed a motion to dismiss the appeal asserting the judgment below was not final because the trial court failed to make an award of attorney fees to her. The motion

was taken with the case. The motion is denied.

5. All statutory references are to RSMo Cum. Supp. (1999) unless otherwise indicated.

not subject to modification. *In re Marriage of Strassner,* 895 S.W.2d 614, 618 (Mo.App. E.D.1995). But, a QDRO can be modified in limited circumstances pursuant to § 452.330.5:

> The court's order as it affects distribution of marital property shall be a final order not subject to modification; provided, however, that orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans pursuant to the U.S. Internal Revenue Code shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

§ 452.330.5.

■ When interpreting a statute, we must try to ascertain the intent of the legislature by looking at the language used in the statute and giving the words their plain and ordinary meaning. *State ex rel. Riordan v. Dierker,* 956 S.W.2d 258, 260 (Mo. banc 1997); *Blue Cross and Blue Shield of Kansas City, Inc., v. Nixon,* 26 S.W.3d 218, 228 (Mo.App. W.D.2000)(en banc). The plain language of § 452.330.5 authorizes the circuit court to modify a QDRO only for one of the following purposes: (1) to establish or maintain the QDRO's status as "qualified" under a particular plan, or (2) to conform its terms to effectuate the intent of the court's order regarding distribution of property. *Wells v. Wells,* 998 S.W.2d 165, 167 (Mo.App. W.D.1999)(*quoting Seal v. Raw,* 954 S.W.2d 681, 685 (Mo.App. W.D.1997)). The Legislature has carved out two limited exceptions to the general rule that the distribution of property in a dissolution action is not modifiable. In *Wells,* we summarized the circuit court's authority to modify a QDRO and stressed the limited

circumstances under which a QDRO can be modified pursuant to § 452.330.5:

> Section 452.330.5 authorizes the circuit court to modify a QDRO, and it places no time limits or restrictions upon the circuit court as to when this can be done. To modify a QDRO, a party must establish that the circuit court would be modifying the QDRO "to establish or to maintain the QDRO's status as 'qualified' under a particular plan or to conform its terms to effectuate the [intent of the court's order regarding distribution of property]."

*Id.* at 168 (*quoting Seal,* 954 S.W.2d at 685).

In the case *sub judice,* the original QDRO received "qualified" status by the plan administrator on March 15, 1993. Because the QDRO had already obtained "qualified" status and there was no evidence that the QDRO was in jeopardy of losing its "qualified" status, the Amended QDRO was not entered by the circuit court "for the purpose of establishing or maintaining the order as a qualified domestic relations order." § 452.330.5. Thus, the only way the circuit court had jurisdiction to modify the QDRO was if the modification was done in order to conform the terms of the QDRO "so as to effectuate the expressed intent of the order." *See* § 452.330.5.

The dissolution decree provided that Wife was to receive one-half of Husband's GM pension plan as of the date he actually retires or ceases to accrue benefits. The court then ordered that Husband's retirement plan be divided pursuant to the QDRO, and that Wife would receive 50% of Husband's total vested interest to his pension/retirement plan with GM. The original QDRO set forth the same provisions: "[Husband's] pension/retirement plan shall be divided pursuant to the [QDRO]...setting aside to [Wife] fifty per-

cent (50%) of [Husband's] total vested interest in and to his pension retirement plan with [GM] *as of the date [Husband] actually retires* or ceases to accrue benefits." Moreover, the QDRO went on to provide that "[c]onsistent with the terms of the aforementioned Plan, [Wife] shall have the right to elect to receive benefits at or after [Husband] having (sic) reached *early retirement age as defined in the Plan.*"

Husband worked 30 years, long enough for his benefits to fully vest, and then he elected to retire early and take advantage of those vested benefits. His vested benefits included not only the basic benefit, reduced for age, but the early retirement supplemental benefit he was receiving in addition to the basic benefit. Both types of benefits are part of GM's retirement package and both are types of "retirement income," and Husband would not be entitled to receive either benefit had he not retired. In accordance with the language used in the dissolution decree, Wife is entitled to 50% of Husband's "total vested interest [in] his pension/retirement plan with General Motors Corporation...as of the date [Husband] actually retires...." It is clear from this language that Husband's total vested interest includes the supplemental benefits he is receiving as part of his retirement plan. Thus, the trial court was merely modifying the QDRO to conform its terms so as to effectuate the expressed intent of the order, as authorized in § 452.330.5. Accordingly, the court had jurisdiction to enter the order and no error occurred.

The trial court's judgment is affirmed.

All concur.