**ALICIA LEWIT, Plaintiff**

**v.**

**ALAN F. LEWIT, Defendant**

Family No. SX-06-DI-265

Superior Court of the Virgin Islands

Division of St. Croix

September 9, 2009

H.A. CURT OTTO, ESQ., Christiansted, USVI, *Attorney for the Plaintiff.*

MARTIAL A. WEBSTER, ESQ., Frederiksted, USVI, *Attorney for the Defendant.*

STEELE, *Judge*

## MEMORANDUM OPINION

(September 9, 2009)

### I. INTRODUCTION

**THIS MATTER** is before the Court on defendant's July 15, 2009 Motion Regarding QDRO[1] Settlement. This divorce action was heard before the Court on May 9, 2008. A divorce decree was issued on August 4, 2008, which provided for the distribution of marital property. The defendant now seeks modification of the decree with regard to the provision distributing a portion of defendant's TIAA-CREF pension fund.

### II. FACTUAL AND PROCEDURAL HISTORY

Alan and Alicia Lewit were married on September 3, 1991 in Trinidad, West Indies. On November 9, 2006, plaintiff-wife Alicia Lewit ("plaintiff") filed a complaint in this divorce action against defendant-husband Alan Lewit ("defendant"). In addition to seeking a divorce decree, along with custody of the minor children and an award of the marital homestead, plaintiff also sought an equitable share of the personal property of the marriage, including a share of defendant's pension plan. Defendant disagreed with the terms of the divorce sought by plaintiff, including the right of plaintiff to his retirement funds, and the parties were ordered to engage in mediation on December 12, 2006. Through mediation, the parties, each represented by counsel, were able to resolve their differences and subsequently filed a Stipulation and Request for Entry of Divorce Decree with the Court on May 29, 2008 ("Stipulation"). In the Stipulation the parties agreed that "the accountants at TIAA-CREF [would] calculate a 50/50 division" in defendant's retirement account from the period beginning from the date of their marriage, September 3, 1991, through the date of mediation, September 25, 2007. Plaintiff agreed to credit defendant $55,000.00 against this amount, representing her consideration for receipt of the marital homestead and entitlement to all

---

[1] Qualified domestic relations order.

121

of her own retirement accounts. Under the agreement, an appropriate qualified domestic relations order ("QDRO") was to be entered dividing the defendant's Government Employees Retirement System ("GERS") entitlement between the parties according to law. On August 4, 2008, the Court issued its Findings of Fact and Conclusions of Law, granting the divorce and providing that the parties were to "receive an equitable share of property in accordance with and pursuant to the Stipulation," which was incorporated into the divorce decree.

On February 9, 2009, the defendant contacted the Court by letter to request a modification of the divorce decree pertaining to the transfer of his retirement funds to the plaintiff. The defendant informed the Court that the value of his pension fund had declined significantly[2] since the date of the divorce decree due to the fact that a portion of these funds was in stocks whose values had depreciated during the financial recession,[3] and argued that the current method of calculating the transfer, based on the value of the assets as of the end date in the Stipulation without any adjustment for the current worth of the assets, was inequitable. Instead, he asked the Court to issue an order providing for one of two alternative methods for calculating the amount to transfer: (1) calculate the number of shares in the CREF stock accrued during the relevant time period and transfer those shares to plaintiff's TIAA-CREF account (applying the $55,000 credit to the fixed assets of the TIAA portion); or (2) compute the 2007 value during the relevant time period for the CREF portion, calculate the current dollar value of that stock and then reduce that amount by $55,000.00. Subsequently, both parties filed motions with the Court.

The defendant filed a Motion Regarding QDRO Settlement ("QDRO Motion") on July 15, 2009, reiterating all the arguments made previously in his letter to the Court. On July 31st. 2009, the plaintiff responded with an Opposition to the QDRO Motion. On August 14, 2009, the Defendant filed a Reply to the Opposition. Defendant argues that in order to make an

---

[2] Defendant indicated that the approximate value of his retirement funds in September of 2007 was $750,000 and currently was worth only $550,000, despite further contributions since that time of approximately $18,000.

[3] In defendant's December 9, 2009 letter to the Court, he explains that approximately one-third of his retirement is in TIAA at a fixed annual percentage, while the remainder of the retirement fund is in CREF, which is dependent on fluctuating stock indices.

equitable transfer of his pension funds under the terms of the decree, the decree should be modified as outlined above. Plaintiff claims a decree distributing marital property cannot, unlike a support order, be modified absent a showing of fraud.

## III. DISCUSSION

The issues before the Court are (1) whether the Court can modify the terms of a divorce decree that provides for distribution of marital property in the form of a pension fund; and if so, (2) whether the defendant has established a sufficient basis for the Court to grant his motion to modify the decree.

### A. *A Decree of Distribution of Marital Property May Be Modified*

**1. A decree of distribution of marital property may be modified upon a showing of a substantial and continuing change of circumstances not anticipated by the divorce court in issuing the decree.**

■ A divorce court in the Virgin Islands, in exercising its jurisdiction to declare a marriage void may issue an order providing for alimony, the support and custody of the children, for the delivery of personal property in the possession of the other party, for the appointment of trustees and permission of the wife to change her name. Title 16 V.I.C. § 109. Although the Domestic Relations Statute in Title 16, § 109 does not explicitly provide for the equitable distribution of personal property, courts have interpreted section 109 as providing an implicit grant of authority to do so. *See, e.g., Fuentes v. Fuentes*, 38 V.I. 29 (Terr. Ct. 1997).

■■ The court in *Fuentes* stated that

> although the term "marital property" finds no definition in the Virgin Islands Family Code . . . nor does there exist specific statutory provisions regarding division of marital property, 16 V.I.C. § 109 allows a divorce court to divide the marital estate by making 'monetary award of alimony in gross,' or by making awards of installment payments, etc.

*Fuentes*, 38 V.I. at 37-38 (citing *Dyndul v. Dyndul*, 541 F.2d 132, 13 V.I. 376 (3rd Cir. 1976)). "Thus, the interpretation of 16 V.I.C. § 109 has been one of

authorizing a divorce court to dispose of all the personal property of a marital estate according to the parties' circumstances." *Id.* at 38. A pension fund is included as marital personal property. *Id.* at 40. *See also*, 24 AM. JUR. 2D *Divorce and Separation* § 503. Thus, the divorce court may provide for the distribution of a pension fund in exercising its right to equitably divide marital property.

██ Generally, a divorce court maintains its jurisdiction after final adjudication and may modify a divorce decree. *See Phaire v. Phaire*, 17 V.I. 236 (Terr. Ct. 1981). In the Virgin Islands, statutory authority to modify a divorce decree is provided under Title 16 V.I.C. § 110, which states that

> at any time after a judgment is given the court, upon the motion of either party on notice, may set aside, alter or modify so much of the judgment as may provide alimony or for the appointment of trustees, for the care and custody of the minor children, or the nurture and education thereof, or the maintenance of either party in the action.

Title 16 V.I.C. § 110. Pursuant to section 110, the court may retrospectively reduce alimony and support obligations when the court finds it equitable to adjust the responsibilities of divorced parties brought about by substantial changes in circumstances following divorce. *See, e.g., Watlington v. Canton*, 18 V.I. 203 (Terr. Ct. 1982); *Emanuel v. Emanuel*, 15 V.I. 103 (D.V.I. 1978). In addition, section 110 "confers on the court the power to set aside, alter or modify its decrees even though they are based on an agreement of the parties to the proceeding." *Viles v. Viles*, 316 F.2d 31, 33, 4 V.I. 415 (3d Cir. 1963).

█ However, section 110 does not explicitly provide for modification of an order distributing marital property. *See, e.g., Marsh v. Marsh*, 33 V.I. 102, 106 (D.V.I. 1995) (noting that "no section of the chapter on Divorce and Annulment of Title 16, the Domestic Relations title of the Virgin Islands Code, mentions or authorizes the division and distribution of property in a divorce proceeding."). In *Marsh*, the court held that the "trial court had authority to modify an earlier property distribution, but that authority derived from 33 V.I.C. § 2305(d), within the Taxation title . . .

not pursuant to 16 V.I.C. § 110, within the Domestic Relations title."[4] *Id.* at 107. Furthermore, courts in other jurisdictions have held that "equitable distribution agreements, unlike alimony and support obligations, are not subject to modification by reason of changed circumstances." *Castriota v. Castriota*, 268 N.J. Super. 417, 422, 633 A.2d 1024, 1027 (N.J. Super. A.D. 1993) (citing *Mahoney v. Mahoney*, 91 N.J. 488, 498, 453 A.2d 527 (1982). *See also*, 24 AM. JUR. 2D *Divorce and Separation* § 562.

On the other hand, it is logically inconsistent to maintain that section 110 does not provide for modification of a decree dividing marital property since, as stated above, in the Virgin Islands it has been held that the authority to dispose of marital property is granted pursuant to the right of the court under section 109 to award alimony, and section 110 provides for a modification of an award of alimony. *See Fuentes*, 38 V.I. at 37-38.

It is noted here that in certain other jurisdictions, the division of marital property rests on explicit statutory authority.[5] Thus reliance on cases in such jurisdictions for the proposition that property divisions are not subject to modification in the Virgin Islands is inadequate since the legal reasoning underlying those courts' decisions differs significantly from that supporting marital property division in this jurisdiction. Here, where the authority to distribute personal property rests solely on the right to award alimony, then the law applicable to modification of alimony must also apply to a division of personal property, which has been categorized as a form of alimony. *Fuentes*, 38 V.I. at 38.

As discussed above, in order to show grounds for modification of alimony, the proponent of such a change must demonstrate that a

---

[4] Title 33 V.I.C. § 2305(d) provides the basis for the divorce court's jurisdiction to dispose of the marital homestead. *See, Roberts v. Roberts*, 26 V.I. 92 (Terr. Ct. 1991).

[5] For example, plaintiff cites the case *Matter of Marriage of Tiley*, 936 P.2d 367, 369-70 (Or. App. 1997) to support the claim that an award of a pension fund is not modifiable. However, the award of a pension fund in that jurisdiction rests on a specific section of Oregon's Domestic Relation's statute, namely, section 107.105(1)(f), which in the event of a dissolution of marriage allows the court to issue a decree providing "[f]or the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances." O.R.S. § 107.105(1)(f). The statute confirms that a retirement plan or pension is considered as such property. *Id.* Likewise, the Oregon statute explicitly provides for modification of a property award when the judgment was "based on the enhanced earning capacity of a party that was awarded before October 23, 1999." O.R.S. § 107.135(1)(e).

substantial and continuing change in circumstances following the divorce has occurred. *Viles*, 316 F.2d at 34; *Emanuel*, 15 V.I. at 106. *C.f.*, *Rogers v. Rogers*, 14 V.I. 130 (Terr. Ct. 1979) (holding that in order to modify child support, the party seeking change must show a substantial and continuing change of circumstances). For example, in *Emanuel*, the court found a substantial change in circumstance where the party seeking a reduction in support had, at the time the order was issued, almost completed his doctoral studies and expected to obtain a well-paying position but subsequently went through long periods of unemployment and low-wage jobs, while the other parent had seen a twenty-five percent increase in her salary during the same time period. *Emanuel*, 15 V.I. at 124. However, a substantial change is not found where one party's knowledge regarding the value of the distributed asset was inaccurate or incomplete at the time the decree was made. *See Hodge v. Hodge*, 15 V.I. 154 (D.V.I. 1979) (holding that the defendant's change in knowledge regarding the ownership of the marital property was not a basis for finding a substantial change in circumstances). Neither is the assumption of new domestic responsibilities, including a second spouse or additional children, a change that warrants modification. *Viles*, 316 F.2d at 35.

In addition to being "substantial and continuing" the change must be unanticipated. *Id.* The alimony decree is presumed to be anticipatory in nature such that the party seeking modification must show that the change was one not anticipated by the court in crafting its support order. *Viles*, 316 F.2d at 34-35. Thus, the proponent of change must show a "significant change in circumstances beyond what had been anticipated and provided for in the original decree." *Id.* at 35. A change may be presumed to be anticipated when facts bringing about the change are "within the purview of the court" at the time of the decree. *See, e.g.*, *Emanuel*, 15 V.I. at 111 (holding that the fact that the children of the parties would attain the age of majority was "within the purview of the court" when it decreed a fixed support sum and thus the fact that children did reach that age was not an unanticipated change supporting a modification of the order.).[6]

---

[6] Although *Emanuel* dealt with a proposed change in child support, the rule regarding the anticipated change applies to any application for a modification pursuant to section 110. *See Emanuel*, 15 V.I. at 110.

■ In sum, the divorce court has the authority to modify a decree distributing marital property upon a showing of a substantial, continuing and unanticipated change that renders continued enforcement of the original decree inequitable.

### a. Defendant has not shown a substantial and continuing change of circumstances that warrants modification of the divorce decree.

■ In the instant case, the defendant argues that the significant decrease in the value of the pension fund would render the distribution inequitable because transferring fifty-percent of the value that the pension fund held in September 2007 would provide plaintiff with more than fifty-percent of the current value of the pension fund. Defendant claims he did not know the method of calculation done by TIAA-CREF when acting to transfer funds pursuant to a QDRO. First of all, under *Hodge*, his lack of knowledge regarding the nature of the calculation is not evidence of a substantial change in circumstances. Secondly, defendant hasn't shown that the decree issued by the Court had not anticipated the change in the value of the assets. At the time of the stipulation, the Court and the parties were aware that fluctuations in the market could affect the value of defendant's pension fund going forward. Likewise, plaintiff's agreement to pay $55,000.00 in consideration for the marital property was based on the value of the property at the time the agreement was reached, market fluctuations in the value of real estate notwithstanding. Defendant has also neglected to show that the change is "continuing." He has acknowledged that the market is likely to recover and the value of the stocks to increase over time. Finally, the defendant has not shown that his income has substantially decreased or that the plaintiff's has substantially increased.[7] Thus, defendant has failed to show a change of circumstance that would warrant a modification of the decree with respect to the pension fund.

---

[7] Defendant states vaguely in his letter and Motion that plaintiff is doing "exceptionally well" in her chiropractic business but plaintiff counters that her income for 2008 was approximately $10,000 and that she had loan debt totaling $250,000, which includes the mortgage for the house.

## 2. A decree of distribution of marital property may be modified in order to effectuate the court's intent in the original decree.

 Even in the absence of a substantial change of circumstance, the court may assert its authority to modify a decree of distribution "in order to effectuate the court's intention in distributing the marital property." *Lowenschuss v. Lowenschuss*, 453 Pa. Super. 340, 342, 683 A.2d 1214, 1216 (Pa. Super. 1996). This authority is recognized even in jurisdictions where a decree disposing of martial property is generally not modifiable. *See, e.g., Miles v. Miles*, 43 S.W.3d 876, 879 (Mo. App. W.D. 2001); *Clement v. Clement*, 34 Conn. App. 641, 646, 643 A.2d 874, 877 (Conn. App. 1994); *Jackson v. Jackson*, 45 P.3d 418, 421 (Okla. 2002). In *Lowenschuss*, the wife petitioned the court to restate the equitable distribution order as a QDRO to preserve her interest in the pension plan that her husband, who initiated bankruptcy proceedings, claimed was exempt from the claims of creditor by virtue of the Employee Retirement Income Security Act. *Lowenschuss*, 453 Pa. Super at 342. The Supreme Court said that the trial court did have jurisdiction to modify the order so as to effectuate its intent to provide the wife with fifty-percent of the husband's pension plan. *Id.* at 343. Similarly, while the court in *Jackson* conceded that "a trial court is without jurisdiction or authority to issue a QDRO that substantively alters a final property division previously made in a divorce action," a trial court *was* authorized to issue a subsequent post-property division QDRO that enabled the retirement system to lawfully pay a former spouse his or her portion of the pension benefit. *Jackson*, 45 P.3d at 421 (emphasis added). In *Miles*, the appellate court affirmed the trial court's modification of a QDRO to ensure that the wife's fifty-percent of the husband's pension plan would include the supplemental income he received upon early retirement. The court reasoned that although the original order did not explicitly include "supplemental" benefits, the original decree had intended the wife to receive all retirement income, including the supplemental income. *Miles v. Miles*, 43 S.W.3d 876, 880 (Mo. App. W.D. 2001) (finding that the modification was valid because "the trial court was merely modifying the QDRO to conform its terms so as to effectuate the expressed intent of the order.").

 As the cases suggest, a trial court may issue a modification that effectuates the intent of the original order by providing the necessary

clarification, *see, e.g., Miles*, 43 S.W.3d at 880, or adding a formal element that enables the order to be carried out. *See, e.g., Jackson*, 45 P.3d at 429. This Court holds also, that to the extent that the modification of a property award effectuates the intent of the original order, the divorce court has authorization to modify the order, even in the absence of a showing of a substantial change of circumstances.

### a. Defendant has not shown that modification of the divorce decree is necessary to effectuate the Court's intent.

In the instant case, the Court's intent was to effectuate the party's agreement, entered into with the advice of counsel, that the plaintiff was to receive fifty-percent of the defendant's pension benefits accrued during the marriage, minus the $55,000.00 for the marital homestead. The defendant is asking to split on the number of shares, rather than the value that had accumulated during the time period agreed to in the Stipulation, or to determine the value of the assets held in September 2007 based on their current dollar value. The thrust of defendant's argument is that the plaintiff will receive more than fifty-percent of the current value of his pension because the value of his assets has declined since the divorce decree was issued. However, the award was not based on the value of the assets at some future date when the transfer would be undertaken, a value which was bound to shift over the course of time. The award was based on the value of the assets during the agreed-upon time period. If the Court's intent was to establish alimony paid in installments from the pension fund, it would likely have fashioned a payment plan that took into account cost of living adjustments and market fluctuations. However, in accord with the parties' intent, the Court issued a decree that called for a lump sum payment of a specific amount of money that both parties could identify. There has been no evidence presented that the Court intended to allow either party to amend the amount of the transfer to provide for market fluctuations.

In conclusion, defendant has neither demonstrated a substantial and continuing change in circumstance nor that the Court intended the amount transferred from the pension fund to be contingent upon market conditions at the time of the transfer. Therefore, defendant's motion to modify the divorce decree issued on August 4, 2008 will not be granted.

A separate Order shall issue ordering the same.