

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **DEBORAH L. ROBERTS,** | ) | |
| Appellant, | ) | |
| | ) | |
| **v.** | ) | **WD76679** |
| | ) | |
| **MICHAEL L. ROBERTS,** | ) | **FILED: June 3, 2014** |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County**
**The Honorable Twila K. Rigby, Judge**

**Before Division Two: Victor C. Howard, P.J., and Alok Ahuja and Mark D. Pfeiffer, JJ.**

Deborah Roberts ("Wife") appeals from a qualified domestic relations order or "QDRO" entered by the Circuit Court of Jackson County, which specifies that, under a 1990 dissolution decree, Wife is entitled to one-half of only *the marital portion* of her ex-husband's retirement benefits. We affirm.

## Factual Background

Wife was married to Michael Roberts ("Husband") on April 9, 1976. Wife filed a petition to dissolve the marriage on September 19, 1989. A hearing on the petition was held on March 20, 1990. The trial court entered its Decree of Dissolution of Marriage that same day. The decree incorporated a written Separation Agreement signed by both Husband and Wife.

Husband was employed at the Marine Corps Finance Center in Kansas City, an agency of the federal government, during the marriage. His compensation package included certain

pension rights through the Civil Service Retirement System.  The Separation Agreement

incorporated into the Dissolution Decree provided that Husband transferred to Wife

> Fifty percent (50%) of the Husband's Civil Service Retirement System "annuity
> with survivor benefit to named person having an insurable interest" as the
> surviving beneficiary thereof, subject to the terms and conditions set forth in the
> Decree of Dissolution of Marriage and further subject to the terms and conditions
> set forth in the Husband's United States Government Civil Service Retirement
> System and its Rules and Regulations pertaining thereto.

At the time of the dissolution of marriage, all of Husband's work for the Marine Corps Finance

Center had occurred during the marriage, and therefore all of his existing pension rights had been

earned during the marriage.

Husband continued to work for the Marine Corps Finance Center following the

dissolution, however.  He retired from the Center in 2013, almost twenty-three years after the

dissolution of his marriage to Wife.  Husband believed that the 1990 dissolution decree awarded

Wife one half of only *the marital portion* of his pension.  The federal Office of Personnel

Management ("OPM") informed him, however, that it believed that the decree required it to

allocate half of his *entire* pension to Wife, including one-half of the benefits which Husband

earned as a result of his post-dissolution employment.

On March 22, 2013, Husband filed a Motion for Judgment Entry of Domestic Relations

Order with the circuit court.  In his motion, Michael asked the trial court to adopt his proposed

form of judgment, which was intended to constitute a "Court Order Acceptable for Processing,"

or "COAP," under OPM's regulations.  Husband's proposed COAP specified that Wife was only

entitled to one-half of the "Marital Portion" of Husband's pension benefits.  The COAP provided

that

> [f]or purposes of calculating the Former Spouse's share of Employee's benefit,
> the Marital Portion shall be determined by multiplying the Employee's Gross
> Monthly Annuity by a fraction, the numerator of which is the total number of
> months of Creditable Service earned by the Employee during the marriage from

2

April 9, 1976 to March 20, 1990, and the denominator of which is the total number of months of the Employee's Creditable Service accrued under [the Civil Service Retirement System] . . . .

The trial court entered a judgment incorporating the terms of Husband's proposed COAP on April 8, 2013. Wife filed a motion to set aside the judgment on May 6, 2013. She argued that the 1990 dissolution decree unequivocally provided that she was entitled to half of Husband's entire pension benefit, rather than merely one-half of the pension rights Husband earned during the marriage. The trial court denied Wife's motion on July 16, 2013. Wife appeals.[1]

**Analysis**

Section 452.330.5[2] provides:

> The court's order as it affects distribution of marital property shall be a final order not subject to modification; provided, however, that orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans pursuant to the U.S. Internal Revenue Code shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

The trial court's judgment adopting the COAP constitutes a "qualified domestic relations order" or "QDRO" within the meaning of § 452.330.5. *Kuba v. Kuba*, 400 S.W.3d 869, 873-75 (Mo. App. W.D. 2013). Therefore, even though divisions of marital property are generally non-modifiable, the trial court had the authority to enter the COAP for the purpose of "effectuat[ing] the expressed intent of" the 1990 dissolution decree. "'Interpretation of a dissolution judgment

---

[1] Generally, appeals may be taken only from final judgments. Section 512.020(5), however, authorizes an appeal from "any special order after final judgment in the cause." Rulings like the one in this case, which seek to implement the property division ordered in an earlier dissolution decree, are appealable "special order[s] after final judgment" under § 512.020(5). *Brooks v. Brooks*, 98 S.W.3d 530, 531 (Mo. banc 2003); *In re Marriage of Green*, 341 S.W.3d 169, 174 (Mo. App. E.D. 2011). As required by *Brooks*, 98 S.W.3d at 532, the COAP entered by the trial court was expressly denominated as a "judgment."

[2] Statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, updated through the 2013 Cumulative Supplement.

3

and a QDRO is an issue of law that we review *de novo*.'" *Id.* at 875 (quoting *In re Marriage of Green*, 341 S.W.3d 169, 175 (Mo. App. E.D. 2011)).

The present dispute must be understood against the backdrop of the Missouri statutes addressing the division of property in a dissolution proceeding. Where a court establishes its own property division, marital and nonmarital property are treated in significantly different ways. Section 452.330.1 provides that "[i]n a proceeding for dissolution of the marriage[,] . . . the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors . . . ."

> Thus, per section 452.330, the trial court is charged with completion of a two-step process: [¶] First, the court must set apart to each spouse his or her separate property. Second, the court must divide the remaining marital property.

*Pollard v. Pollard*, 401 S.W.3d 506, 511 (Mo. App. W.D. 2013) (citation and internal quotation marks omitted). "'[A] court has no authority acting on its own to divide separate or nonmarital property and in fact commits *prima facie* error when it awards a spouse a partial interest in the other spouse's nonmarital property.'" *Dahn v. Dahn*, 346 S.W.3d 325, 337 n.9 (Mo. App. W.D. 2011) (quoting *In re Marriage of Medlock*, 990 S.W.2d 186, 188 (Mo. App. S.D. 1999)).

Property acquired or earned during the marriage is generally presumed to be marital property, while property acquired before or after the marriage is presumed to be nonmarital. Section 452.330.3 provides that

> [a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property.

There is a strong presumption that property acquired during the marriage is marital property. *Heslop v. Heslop*, 967 S.W.2d 249, 254 (Mo. App. W.D. 1998). "Conversely, if property was

4

acquired outside the marriage, it is presumed to be nonmarital." *Petties v. Petties*, 129 S.W.3d 901, 908 (Mo. App. W.D. 2004).

The distinction between marital and nonmarital property applies to retirement benefits. "It is well-settled in Missouri that only the portion of retirement benefits which are acquired during marriage are considered marital property subject to division under § 452.330." *Rich v. Rich*, 871 S.W.2d 618, 627 (Mo. App. E.D. 1994); *see also Gambrel v. Gambrel*, 943 S.W.2d 314, 315 (Mo. App. E.D. 1997); *Mabon v. Mabon*, 833 S.W.2d 488, 489 (Mo. App. W.D. 1992).

> [A] worker is considered to have earned a ratable proportion of his or her pension as that person works, so that if a spouse was married for one-half of his or her working life, the former spouse would be entitled to a proportionate share of one-half of the pension benefits.

*Kelly v. Kelly*, 340 S.W.3d 673, 679 (Mo. App. W.D. 2011) (quoting *Mo. Prosecuting Attorneys v. Barton Cnty.*, 311 S.W.3d 737, 743 (Mo. banc 2010)).

Therefore, in the 1990 dissolution decree the trial court would not have had the authority to award Wife any portion of the pension benefits Husband earned during his *post-dissolution* employment with the Marine Corps Finance Center, because pension benefits earned after dissolution of the parties' marriage would be considered Husband's nonmarital property.

Although *the trial court* may not have authority to do so, however, *the parties* may agree to a property division which awards one spouse a share of the other spouse's nonmarital property. Section 452.325 encourages divorcing spouses to agree to the division of their property, and provides that those voluntary agreements will generally be enforced by the courts. Section 452.325 provides:

> 1. To promote the amicable settlement of disputes between the parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a written separation agreement containing provisions for the maintenance of either of them, the disposition of any property owned by either of them, and the custody, support and visitation of their children.

5

2.    In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except terms providing for the custody, support, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

*Franken v. Franken*, 191 S.W.3d 700 (Mo. App. W.D. 2006), confirms that a separation agreement to which the parties voluntarily agree may award one spouse's nonmarital property to the other spouse. In *Franken*, the parties signed a settlement agreement which distributed part of an annuity to wife. *Id.* at 701. After finding that the settlement agreement was not unconscionable, the trial court incorporated the agreement into its dissolution decree. *Id.* Husband later argued that the trial court lacked jurisdiction to distribute any share of the annuity to wife, because the annuity was husband's nonmarital property. *Id.* This Court rejected the husband's argument. We emphasized that a separation agreement to which the parties voluntarily agree is not subject to the limitations on a trial court's authority found in § 452.330:

> [Husband] relied on Section 452.330.1, RSMo 2000, which mandates that the circuit court "set apart to each spouse such spouse's nonmarital property." He overlooks, however, Section 452.325, RSMo 2000, which requires circuit courts to honor parties' written agreements regarding property division.

*Id.* at 702 (citation omitted); *see also In re Marriage of Kohler*, 778 S.W.2d 19, 21 (Mo. App. E.D. 1989) (rejecting argument that trial court's judgment had the effect of distributing nonmarital property in violation of § 452.330, where property division was derived from a separation agreement which the court had found not to be unconscionable).

While spouses are free to enter into a separation agreement which distributes nonmarital property, they did not do so in this case. The terms of the separation agreement, incorporated into the 1990 dissolution decree, are construed according to the principles governing contract interpretation.

> The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. Where the parties have expressed their final and complete agreement in writing and there is no ambiguity in the contract, the intent of the parties must be determined solely from the four corners of the contract itself.

*Eveland v. Eveland*, 156 S.W.3d 366, 368-69 (Mo. App. E.D. 2004) (citations and internal quotation marks omitted).

It is a fundamental principle of contract construction that "'[i]n determining the intent of the parties to a contract, we review the terms of a contract as a whole, not in isolation.'"[3] Wife ignores this bedrock principle. She focuses on isolated provisions of the 1990 dissolution decree, which state that she was awarded "[f]ifty percent (50%) of the Husband's Civil Service Retirement System 'annuity,'" and that she "shall receive Fifty percent (50%) of [Husband's] monthly retirement annuity . . . upon [Husband's] retirement . . . ." Wife ignores, however, that multiple provisions of the dissolution decree specify that the parties' separation agreement only divided *marital* property then in existence, and that the parties specifically disclaimed any right to the other party's *nonmarital* property. In these circumstances, the trial court was required to enter a COAP which limited Wife's share to 50% of the *marital* portion of Husband's pension.

The decree unambiguously states that "[n]either the Wife nor the Husband makes any claim to the non-marital property of the other." The decree also makes clear that Exhibits A and B, which contain the provisions on which Wife relies, only dispose of *marital* property:

> B. Marital Property: The parties shall transfer all right, title and interest in and to the property set forth in Exhibit "A" and "B," attached hereto and incorporated herein by reference according to the terms set forth thereon.

---

[3] *Pub. Commc'ns Servs., Inc. v. Simmons*, 409 S.W.3d 538, 548 (Mo. App. W.D. 2013) (quoting *U.S. Neurosurgical, Inc. v. Midwest Div.–RMC, LLC*, 303 S.W.3d 660, 665 (Mo. App. W.D. 2010) (en banc)); *see also Wilson v. Lilleston*, 290 S.W.3d 795, 800 (Mo. App. W.D. 2009) ("'When interpreting a judgment, [the appellate] court examines the language of the judgment in its entirely and determines the intention of the trial court from all parts of the judgment.'" (citation omitted)).

The property listed as Marital Property in Exhibits "A" and "B" is hereby declared to be marital property, and all other property not therein listed is hereby declared to be non-marital property.

The decree elsewhere states that it is awarding to Wife "a portion of [Husband's] marital asset known as [Husband's] Civil Service Retirement (Pension)" and related benefits.

The separation agreement also recognizes that Husband may elect in certain circumstances to receive a refund of his voluntary contributions to the Civil Service Retirement System; in that event, the decree provides that Wife will receive "Ten Thousand, Four Hundred Fifty-eight Dollars ($10,458.00), plus accrued interest earned thereon as of January 1, 1990 . . . ." The fact that the decree limits Wife's lump-sum share to a fixed dollar amount, calculated as of the time of dissolution, confirms that the parties' intention was for only the marital portion of the pension to be divided.

The decree also contains a representation by each party to the other "that they have revealed to each other all of their assets and debts which they now presently own, have an interest in, or owe, and this Agreement in one form or another makes reference to each of their assets and debts." This representation indicates that the parties' separation agreement did not address *after-acquired* property, but only the property which existed as of the date of the dissolution decree.

Thus, considering the decree as a whole, it is clear that the parties' separation agreement awarded Wife one-half of only the *marital* portion of Husband's pension rights. As we have discussed, under Missouri law only the pension benefits which Husband earned *during the marriage* are considered to be marital property. The decree gives no indication that it was intended to award Wife any share of the retirement benefits Husband acquired *after* dissolution, as part of his *nonmarital* compensation. The circuit court properly entered a COAP which

8

limited Wife's one-half interest to the portion of Husband's pension rights earned during the marriage.[4]

In his Brief, Husband asks that the formula specified in the COAP for calculating the marital portion of his retirement benefits be modified. We reject this suggestion. First, Husband proposed the COAP which the circuit court entered; he cannot now attack an aspect of the judgment which he asked the circuit court to enter. *See*, *e.g.*, *Sutton v. McCollum*, 421 S.W.3d 477, 481 (Mo. App. S.D. 2013) ("'[a] party cannot lead a trial court into error and then employ the error as a source of complaint on appeal.' Appellate courts will not reverse a trial court on the basis of an invited error." (citations omitted)); *G.H. v. Eli Lilly & Co.*, 412 S.W.3d 326, 332 (Mo. App. W.D. 2013). Second, Husband did not file a cross-appeal. Without a cross-appeal, Husband may not seek *modification* of the judgment to achieve more or different relief. *Johnson v. Medtronic, Inc.*, 365 S.W.3d 226, 239 n.12 (Mo. App. W.D. 2012).

## Conclusion

The circuit court's judgment, which specified that Wife was entitled to one-half of only the marital portion of Husband's civil service retirement benefits, is affirmed.

_____
Alok Ahuja, Judge

All concur.

---

[4] Wife argues that reversal is mandated by our decision in *Miles v. Miles*, 43 S.W.3d 876 (Mo. App. W.D. 2011). We disagree. In *Miles*, a dissolution decree awarded a wife one-half of her husband's "*total vested interest* [in] his pension/retirement plan . . . *as of the date [husband] actually retires.*" *Id.* at 880. The emphasized language indicated that the wife was awarded one-half of husband's total retirement benefits as they existed on his ultimate retirement date. This language is far different from the isolated provisions of the 1990 dissolution decree on which Wife relies in this case, however. Moreover, the *Miles* decree did not contain the additional language present in this case, which makes clear that the 1990 dissolution decree only divided the retirement benefits which constituted *marital* property.

9